# NATIONAL LABOR RELATIONS BOARD *v.* KENTUCKY RIVER COMMUNITY CARE, INC., ET AL.

No. 99–1815.   Argued February 21, 2001—Decided May 29, 2001

*Deputy Solicitor General Wallace* argued the cause for petitioner.  With him on the briefs were former *Solicitor General Waxman, Matthew D. Roberts, Leonard R. Page, John H. Ferguson, Norton J. Come,* and *John Emad Arbab. Thomas J. Schulz, Jonathan P. Hiatt, James B. Coppess,* and

*Laurence Gold* filed briefs for Kentucky State District Council of Carpenters as respondent under this Court's Rule 12.6 in support of petitioner.

*Michael W. Hawkins* argued the cause for respondent Kentucky River Community Care, Inc. With him on the brief were *Louise S. Brock* and *Cheryl E. Bruner.**

JUSTICE SCALIA delivered the opinion of the Court.

Under the National Labor Relations Act, employees are deemed to be "supervisors" and thereby excluded from the protections of the Act if, *inter alia,* they exercise "independent judgment" in "responsibly . . . direct[ing]" other employees "in the interest of the employer." 29 U. S. C. § 152(11). This case presents two questions: which party in an unfair-labor-practice proceeding bears the burden of proving or disproving an employee's supervisory status; and whether judgment is not "independent judgment" to the extent that it is informed by professional or technical training or experience.

## I

In Pippa Passes, Kentucky, respondent Kentucky River Community Care, Inc., operates a care facility for residents who suffer from mental retardation and mental illness. The facility, named the Caney Creek Developmental Complex (Caney Creek), employs approximately 110 professional and nonprofessional employees in addition to roughly a dozen concededly managerial or supervisory employees. In 1997, the Kentucky State District Council of Carpenters (a labor

---

*Briefs of *amici curiae* urging reversal were filed for the American Nurses Association by *Barbara J. Sapin* and *Woody N. Peterson;* and for the Service Employees International Union et al. by *Judith A. Scott, Diana O. Ceresi, Robert E. Funk, Jr., David J. Strom, Jack Dempsey,* and *Larry Weinberg.*

Briefs of *amici curiae* urging affirmance were filed for the American Health Care Association by *Thomas V. Walsh* and *Thomas P. McDonough;* and for Human Resource Management et al. by *G. Roger King.*

union that is co-respondent here, supporting petitioner) petitioned the National Labor Relations Board to represent a single unit of all 110 potentially eligible employees at Caney Creek. See National Labor Relations Act (Act) § 9(c), 49 Stat. 453, 29 U. S. C. § 159(c).

At the ensuing representation hearing, respondent objected to the inclusion of Caney Creek's six registered nurses in the bargaining unit, arguing that they were "supervisors" under § 2(11) of the Act, 29 U. S. C. § 152(11), and therefore excluded from the class of "employees" subject to the Act's protection and includable in the bargaining unit. See § 2(3), 29 U. S. C. § 152(3). The Board's Regional Director, to whom the Board has delegated its initial authority to determine an appropriate bargaining unit, see § 3(b), 29 U. S. C. § 153(b); 29 CFR § 101.21 (2000), placed the burden of proving supervisory status on respondent, found that respondent had not carried its burden, and therefore included the nurses in the bargaining unit. The Regional Director accordingly directed an election to determine whether the union would represent the unit. See § 9(c)(1), 29 U. S. C. § 159(c)(1). The Board denied respondent's request for review of the Regional Director's decision and direction of election, and the union won the election and was certified as the representative of the Caney Creek employees.

Because direct judicial review of representation determinations is unavailable, *AFL* v. *NLRB*, 308 U. S. 401, 409–411 (1940), respondent sought indirect review by refusing to bargain with the union, thereby inducing the General Counsel of the Board to file an unfair labor practice complaint under §§ 8(a)(1) and 8(a)(5) of the Act, 29 U. S. C. §§ 158(a)(1), (5). The Board granted summary judgment to the General Counsel pursuant to regulations providing that, absent newly developed evidence, the propriety of a bargaining unit may not be relitigated in an unfair labor practice hearing predicated on a challenge to the representation determination. 29 CFR § 102.67(f) (2000); see *Magnesium Casting Co.* v.

*NLRB*, 401 U. S. 137, 139–141 (1971) (approving that practice); *Pittsburgh Plate Glass Co.* v. *NLRB*, 313 U. S. 146, 161–162 (1941) (same).

Respondent petitioned for review of the Board's decision in the United States Court of Appeals for the Sixth Circuit, and the Board cross-petitioned. The Sixth Circuit granted respondent's petition as it applied to the nurses and refused to enforce the bargaining order. It held that the Board had erred in placing the burden of proving supervisory status on respondent rather than on its General Counsel, and it rejected the Board's interpretation of "independent judgment," explaining that the Board had erred by classifying "the practice of a nurse supervising a nurse's aide in administering patient care" as "'routine' [simply] because the nurses have the ability to direct patient care by virtue of their training and expertise, not because of their connection with 'management.'" 193 F. 3d 444, 453 (1999). We granted the Board's petition for a writ of certiorari. 530 U. S. 1304 (2000).

## II

The Act expressly defines the term "supervisor" in § 2(11), which provides:

> "The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U. S. C. § 152(11).

The Act does not, however, expressly allocate the burden of proving or disproving a challenged employee's supervisory status. The Board therefore has filled the statutory gap with the consistent rule that the burden is borne by

the party claiming that the employee is a supervisor. For example, when the General Counsel seeks to attribute the conduct of certain employees to the employer by virtue of their supervisory status, this rule dictates that he bear the burden of proving supervisory status. See, *e. g., Masterform Tool Co.,* 327 N. L. R. B. 1071, 1071–1072 (1999). Or, when a union challenges certain ballots cast in a representation election on the basis that they were cast by supervisors, the union bears the burden. See, *e. g., Panaro and Grimes,* 321 N. L. R. B. 811, 812 (1996).

The Board argues that the Court of Appeals for the Sixth Circuit erred in not deferring to its resolution of the statutory ambiguity, and we agree. The Board's rule is supported by "the general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits." *FTC* v. *Morton Salt Co.,* 334 U. S. 37, 44–45 (1948). The Act's definition of "employee," §2(3), 29 U. S. C. §152(3), "reiterate[s] the breadth of the ordinary dictionary definition" of that term, so that it includes "any 'person who works for another in return for financial or other compensation.'" *NLRB* v. *Town & Country Elec., Inc.,* 516 U. S. 85, 90 (1995) (quoting American Heritage Dictionary 604 (3d ed. 1992)). Supervisors would fall within the class of employees, were they not expressly excepted from it. See *Sure-Tan, Inc.* v. *NLRB,* 467 U. S. 883, 891 (1984); cf. *Packard Motor Car Co.* v. *NLRB,* 330 U. S. 485 (1947). The burden of proving the applicability of the supervisory exception, under *Morton Salt,* should thus fall on the party asserting it. In addition, it is easier to prove an employee's authority to exercise 1 of the 12 listed supervisory functions than to disprove an employee's authority to exercise any of those functions, and practicality therefore favors placing the burden on the party asserting supervisory status. We find that the Board's rule for allocating the burden of proof is reasonable and consistent with the Act, and

we therefore defer to it. *NLRB* v. *Transportation Management Corp.*, 462 U. S. 393, 402–403 (1983).

Applying its rule to this case, the Board placed on respondent the duty to prove the supervisory status of its nurses both in the § 9(c) representation proceeding, where respondent sought to exclude the nurses from the bargaining unit prior to the election, and in the unfair labor practice hearing, where respondent defended against the § 8(a)(5) refusal-to-bargain charge. Respondent challenges the application of the rule to the latter proceeding where, it correctly observes and the Board does not dispute, "the General Counsel carries the burden of proving the elements of an unfair labor practice," *id.*, at 401, which means that it bears the burden of persuasion as well as of production, see Administrative Procedure Act, 5 U. S. C. § 556(d); *Director, Office of Workers' Compensation Programs* v. *Greenwich Collieries*, 512 U. S. 267, 276–278 (1994) (rejecting statement to contrary in *NLRB* v. *Transportation Management Corp., supra,* at 404, n. 7). Supervisory status, however, is not an element of the Board's claim in this setting. The Board must prove that the employer refused to bargain with the representative of a unit of "employees," § 8(a)(5), 29 U. S. C. § 158(a)(5), that was properly certified; the unit was not properly certified (as the respondent contends) only if the respondent successfully demonstrated, at the certification stage, that some employees in the unit were also supervisors. In the unfair labor practice proceeding, therefore, the burden remains on the employer to establish the excepted status of these nurses. Insofar as the Court of Appeals held otherwise, it erred. It remains to consider whether the court's other holding that is challenged here suffices to sustain its judgment.

### III

The text of § 2(11) of the Act that we quoted above, 29 U. S. C. § 152(11), sets forth a three-part test for deter-

mining supervisory status. Employees are statutory supervisors if (1) they hold the authority to engage in any 1 of the 12 listed supervisory functions, (2) their "exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment," and (3) their authority is held "in the interest of the employer." *NLRB* v. *Health Care & Retirement Corp. of America,* 511 U. S. 571, 573–574 (1994). The only basis asserted by the Board, before the Court of Appeals and here, for rejecting respondent's proof of supervisory status with respect to directing patient care was the Board's interpretation of the second part of the test—to wit, that employees do not use "independent judgment" when they exercise "ordinary professional or technical judgment in directing less-skilled employees to deliver services in accordance with employer-specified standards." Brief for Petitioner 11. The Court of Appeals rejected that interpretation, and so do we.

Two aspects of the Board's interpretation are reasonable, and hence controlling on this Court, see *NLRB* v. *Town & Country Elec., Inc., supra,* at 89–90; *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U. S. 837, 842–844 (1984). First, it is certainly true that the statutory term "independent judgment" is ambiguous with respect to the *degree* of discretion required for supervisory status. See *NLRB* v. *Health Care & Retirement Corp. of America, supra,* at 579. Many nominally supervisory functions may be performed without the "exercis[e of] such a degree of . . . judgment or discretion . . . as would warrant a finding" of supervisory status under the Act. *Weyerhaeuser Timber Co.,* 85 N. L. R. B. 1170, 1173 (1949). It falls clearly within the Board's discretion to determine, within reason, what scope of discretion qualifies. Second, as reflected in the Board's phrase "in accordance with employer-specified standards," it is also undoubtedly true that the degree of judgment that might ordinarily be required to conduct a particular task may be reduced below the statutory threshold

by detailed orders and regulations issued by the employer. So, for example, in *Chevron Shipping Co.*, 317 N. L. R. B. 379, 381 (1995), the Board concluded that "although the contested licensed officers are imbued with a great deal of responsibility, their use of independent judgment and discretion is circumscribed by the master's standing orders, and the Operating Regulations, which require the watch officer to contact a superior officer when anything unusual occurs or when problems occur."

The Board, however, argues further that the judgment even of employees who are permitted by their employer to exercise a sufficient *degree* of discretion is not "independent judgment" if it is a particular *kind* of judgment, namely, "ordinary professional or technical judgment in directing less-skilled employees to deliver services." Brief for Petitioner 11. The first five words of this interpretation insert a startling categorical exclusion into statutory text that does not suggest its existence. The text, by focusing on the "clerical" or "routine" (as opposed to "independent") nature of the judgment, introduces the question of degree of judgment that we have agreed falls within the reasonable discretion of the Board to resolve. But the Board's categorical exclusion turns on factors that have nothing to do with the degree of discretion an employee exercises. Cf. *Whitman* v. *American Trucking Assns., Inc.*, 531 U. S. 457, 481 (2001) ("[T]he agency's interpretation goes beyond the limits of what is ambiguous and contradicts what in our view is quite clear"). Let the judgment be significant and only loosely constrained by the employer; if it is "professional or technical" it will nonetheless not be independent.[1] The breadth

---

[1] The Board in its reply brief in this Court steps back from this interpretation and argues that it has only drawn distinctions between degrees of authority. Reply Brief for Petitioner 3. But the opinions of the Board that developed its current interpretation of "independent judgment" clearly draw a categorical distinction. See, *e. g., Providence Hospital*, 320 N. L. R. B. 717, 729 (1996) ("Section 2(11) supervisory authority does

of this exclusion is made all the more startling by virtue of the Board's extension of it to judgment based on greater "experience" as well as formal training. See Reply Brief for Petitioner 3 ("professional or technical skill or experience"). What supervisory judgment worth exercising, one must wonder, does not rest on "professional or technical skill or experience"? If the Board applied this aspect of its test to every exercise of a supervisory function, it would virtually eliminate "supervisors" from the Act. Cf. *NLRB* v. *Yeshiva Univ.*, 444 U. S. 672, 687 (1980) (Excluding "decisions . . . based on . . . professional expertise" would risk "the indiscriminate recharacterization as covered employees of professionals working in supervisory and managerial capacities").

As it happens, though, only one class of supervisors would be eliminated in practice, because the Board limits its categorical exclusion with a qualifier: Only professional judgment that is applied "in directing less-skilled employees to deliver services" is excluded from the statutory category of "independent judgment." Brief for Petitioner 11. This second rule is no less striking than the first, and is directly contrary to the text of the statute. *Every* supervisory function listed by the Act is accompanied by the statutory requirement that its exercise "requir[e] the use of independent judgment" before supervisory status will obtain, § 152(11), but the Board would apply its restriction upon "independent judgment" to just 1 of the 12 listed functions: "responsibly

not include the authority of an employee to direct another to perform discrete tasks stemming from the directing employee's experience, skills, training, or position"). It is those opinions that were cited in the Regional Director's opinion resolving the representation dispute, see App. to Pet. for Cert. 52a–53a, which was accepted without further review by the Board and was unreviewable in the unfair labor practice proceeding. "We do not, of course, substitute counsel's *post hoc* rationale for the reasoning supplied by the Board itself." *NLRB* v. *Yeshiva Univ.*, 444 U. S. 672, 685, n. 22 (1980) (citing *SEC* v. *Chenery Corp.*, 332 U. S. 194, 196 (1947)).

to direct." There is no apparent textual justification for this asymmetrical limitation, and the Board has offered none. Surely no conceptual justification can be found in the proposition that supervisors exercise professional, technical, or experienced judgment only when they direct other employees. Decisions "to hire, . . . suspend, lay off, recall, promote, discharge, . . . or discipline" other employees, *ibid.*, must often depend upon that same judgment, which enables assessment of the employee's proficiency in performing his job. See *NLRB* v. *Yeshiva Univ., supra*, at 686 ("[M]ost professionals in managerial positions continue to draw on their special skills and training"). Yet in no opinion that we were able to discover has the Board held that a supervisor's judgment in hiring, disciplining, or promoting another employee ceased to be "independent judgment" because it depended upon the supervisor's professional or technical training or experience. When an employee exercises one of these functions with judgment that possesses a sufficient degree of independence, the Board invariably finds supervisory status. See, *e. g., Trustees of Noble Hospital*, 218 N. L. R. B. 1441, 1442 (1975).

The Board's refusal to apply its limiting interpretation of "independent judgment" to any supervisory function other than responsibly directing other employees is particularly troubling because just seven years ago we rejected the Board's interpretation of part three of the supervisory test that similarly was applied only to the same supervisory function. See *NLRB* v. *Health Care & Retirement Corp. of America*, 511 U. S. 571 (1994). In *Health Care*, the Board argued that nurses did not exercise their authority "in the interest of the employer," as § 152(11) requires, when their "independent judgment [was] exercised incidental to professional or technical judgment" instead of for "disciplinary or other matters, i. e., in addition to treatment of patients." *Northcrest Nursing Home*, 313 N. L. R. B. 491, 505 (1993). It did not escape our notice that the target of this analy-

sis was the supervisory function of responsible direction. "Under § 2(11)," we noted, "an employee who in the course of employment uses independent judgment to engage in 1 of the 12 listed activities, including responsible direction of other employees, is a supervisor.   Under the Board's test, however, a nurse who in the course of employment uses independent judgment to engage in responsible direction of other employees is not a supervisor." 511 U. S., at 578–579. We therefore rejected the Board's analysis as "inconsistent with . . . the statutory language," because it "rea[d] the responsible direction portion of § 2(11) out of the statute in nurse cases." *Id.*, at 579–580.   It is impossible to avoid the conclusion that the Board's interpretation of "independent judgment," applied to nurses for the first time after our decision in *Health Care,* has precisely the same object.   This interpretation of "independent judgment" is no less strained than the interpretation of "in the interest of the employer" that it has succeeded.[2]   Cf. *Allentown Mack Sales & Service, Inc.* v. *NLRB,* 522 U. S. 359, 374 (1998) (an agency that announces one principle but applies another is not acting rationally under the Act).

The Board contends, however, that Congress incorporated the Board's categorical restrictions on "independent judgment" when it first added the term "supervisor" to the Act in 1947.   We think history shows the opposite.   The Act as originally passed by Congress in 1935 did not mention supervisors directly.   It extended to "employees" the "right to self-organization, to form, join, or assist labor organizations,

---

[2] JUSTICE STEVENS argues in this case, see *post,* at 725–726 (opinion concurring in part and dissenting in part), as the Board argued in *NLRB* v. *Health Care & Retirement Corp. of America,* 511 U. S. 571, 579 (1994), that the strain is eased by the ambiguity of a different term in the statute, "responsibly to direct."   That argument is no more persuasive now than when we rejected it in *Health Care:* "[A]mbiguity in one portion of a statute does not give the Board license to distort other provisions of the statute," *ibid.*

[and] to bargain collectively through representatives of their own choosing . . . ." Act of July 5, 1935, § 7, 49 Stat. 452, and it defined "employee" expansively (if circularly) to "include any employee," § 2(3). We therefore held that supervisors were protected by the Act. *Packard Motor Car Co. v. NLRB,* 330 U. S. 485 (1947). Congress in response added to the Act the exemption we had found lacking. The Labor Management Relations Act, 1947 (Taft-Hartley Act) expressly excluded "supervisors" from the definition of "employees" and thereby from the protections of the Act. § 2(3), 61 Stat. 137, as amended, 29 U. S. C. § 152(3) ("The term 'employee' . . . shall not include . . . any individual employed as a supervisor"); Taft-Hartley Act § 14(a), as amended, 29 U. S. C. § 164(a) ("[N]o employer [covered by the Act] shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining").

Well before the Taft-Hartley Act added the term "supervisor" to the Act, however, the Board had already been defining it, because while the Board agreed that supervisors were protected by the 1935 Act, it also determined that they should not be placed in the same bargaining unit as the employees they oversaw. To distinguish the two groups, the Board defined "supervisors" as employees who "supervise or direct the work of [other] employees . . . , *and* who have authority to hire, promote, discharge, discipline, or otherwise effect changes in the status of such employees." *Douglas Aircraft Co.,* 50 N. L. R. B. 784, 787 (1943) (emphasis added). The "and" bears emphasis because it was a true conjunctive: The Board consistently held that employees whose only supervisory function was directing the work of other employees were not "supervisors" within its test. For example, in *Bunting Brass & Bronze Co.,* 58 N. L. R. B. 618, 620 (1944), the Board wrote: "We are of the opinion that, while linemen do direct the work of [other] employees, they do not exercise substantial supervisory authority within the

usual meaning of that term." See also, *e. g., Duval Texas Sulphur Co.*, 53 N. L. R. B. 1387, 1390–1391 (1943) ("As to the chief electrician, motor mechanic, plant engineers, and drillers, . . . [t]he fact that they work with helpers, and perforce direct and guide the work of their helpers, does not, of itself, elevate them to such supervisory rank that they must be excluded from the broad production and maintenance unit").

When the Taft-Hartley Act added the term "supervisor" to the Act in 1947, it largely borrowed the Board's definition of the term, with one notable exception: Whereas the Board required a supervisor to direct the work of other employees *and* perform another listed function, the Act permitted direction alone to suffice. "The term 'supervisor' means any individual having authority . . . to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, *or* responsibly to direct them, or to adjust their grievances." Taft-Hartley Act § 2(11), as amended, 29 U. S. C. § 152(11) (emphasis added). Moreover, the Act assuredly did *not* incorporate the Board's current interpretation of the term "independent judgment" as applied to the function of responsible direction, since the Board had not yet developed that interpretation. It had had no reason to do so, because it had limited the category of supervisors more directly, by requiring functions *in addition* to responsible direction. It is the Act's alteration of precisely that aspect of the Board's jurisprudence that has pushed the Board into a running struggle to limit the impact of "responsibly to direct" on the number of employees qualifying for supervisory status—presumably driven by the policy concern that otherwise the proper balance of labor-management power will be disrupted.

It is upon that policy concern that the Board ultimately rests its defense of its interpretation of "independent judgment." In arguments that parallel those expressed by the dissent in *Health Care*, see 511 U. S., at 588–590 (GINS-

BURG, J., dissenting), and which are adopted by JUSTICE STEVENS in this case, see *post*, at 726–727, the Board contends that its interpretation is necessary to preserve the inclusion of "professional employees" within the coverage of the Act. See § 2(12), 29 U. S. C. § 152(12). Professional employees by definition engage in work "involving the consistent exercise of discretion and judgment." § 152(12)(a)(ii). Therefore, the Board argues (enlisting dictum from our decision in *NLRB* v. *Yeshiva Univ.*, 444 U. S., at 690, and n. 30, that was rejected in *Health Care*, see 511 U. S., at 581–582), if judgment of that sort makes one a supervisor under § 152(11), then Congress's intent to include professionals in the Act will be frustrated, because "many professional employees (such as lawyers, doctors, and nurses) customarily give judgment-based direction to the less-skilled employees with whom they work," Brief for Petitioner 33. The problem with the argument is not the soundness of its labor policy (the Board is entitled to judge that without our constant second-guessing, see, *e. g.*, *NLRB* v. *Curtin Matheson Scientific, Inc.*, 494 U. S. 775, 786 (1990)). It is that the policy cannot be given effect through this statutory text. See *Health Care, supra,* at 581 ("[T]here may be 'some tension between the Act's exclusion of [supervisory and] managerial employees and its inclusion of professionals,' but we find no authority for 'suggesting that that tension can be resolved' by distorting the statutory language in the manner proposed by the Board") (quoting *NLRB* v. *Yeshiva Univ., supra,* at 686). Perhaps the Board could offer a limiting interpretation of the supervisory function of responsible direction by distinguishing employees who direct the manner of others' performance of discrete *tasks* from employees who direct other *employees,* as § 152(11) requires. Certain of the Board's decisions appear to have drawn that distinction in the past, see, *e. g.*, *Providence Hospital,* 320 N. L. R. B. 717, 729 (1996). We have no occasion to consider it here, however, because the Board has carefully

insisted that the proper interpretation of "responsibly to direct" is not at issue in this case, see Brief for Petitioner 21–22, n. 9; Reply Brief for Petitioner 7–8, n. 6.

What is at issue is the Board's contention that the policy of covering professional employees under the Act justifies the categorical exclusion of professional judgments from a term, "independent judgment," that naturally includes them. And further, that it justifies limiting this categorical exclusion to the supervisory function of responsibly directing other employees. These contentions contradict both the text and structure of the statute, and they contradict as well the rule of *Health Care* that the test for supervisory status applies no differently to professionals than to other employees. 511 U. S., at 581. We therefore find the Board's interpretation unlawful. See *Allentown Mack Sales & Service, Inc.* v. *NLRB*, 522 U. S., at 364 ("Courts must defer to the requirements imposed by the Board if they are 'rational and consistent with the Act,' and if the Board's 'explication is not inadequate, irrational or arbitrary'" (citations omitted)).

\* \* \*

We may not enforce the Board's order by applying a legal standard the Board did not adopt, *NLRB* v. *Bell Aerospace Co.*, 416 U. S. 267, 289–290 (1974); *SEC* v. *Chenery Corp.*, 318 U. S. 80, 87–88 (1943), and, as we noted above, *supra*, at 713, the Board has not asked us to do so. Hence, the Board's error in interpreting "independent judgment" precludes us from enforcing its order. Our decision in *Health Care*, where the Board similarly had not asserted that its decision was correct on grounds apart from the one we rejected, see 511 U. S., at 584, simply affirmed the judgment of the Court of Appeals denying enforcement. Since that same condition applies here, see Brief for Petitioner 14, 42, and since neither party has suggested that *Health Care's* method for determining the propriety of a remand should

not apply here, we take the same course.[3] "Our conclusion that the Court of Appeals was correct to find the Board's test inconsistent with the statute . . . suffices to resolve the case." *Health Care, supra,* at 584. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE SOUTER, JUSTICE GINSBURG, and JUSTICE BREYER join, concurring in part and dissenting in part.

In my opinion, the National Labor Relations Board correctly found that respondent, Kentucky River Community Care, Inc., failed to prove that the six registered nurses employed at its facility in Pippa Passes, Kentucky, are "supervisors" within the meaning of the National Labor Relations Act. While we are unanimous in holding that the Court of Appeals set aside that finding based upon an incorrect allocation of the burden of proof, we disagree as to whether the Court of Appeals correctly concluded that the Board misinterpreted the provision of the NLRA excluding supervisors from the Act's coverage. Moreover, even if I agreed with the majority's view that the Board's interpretation was error, that error would not justify affirming the erroneous decision of the Court of Appeals.

———

[3] Our decision in *Health Care* cannot be distinguished, as JUSTICE STEVENS suggests, see *post,* at 729, n. 10, on the ground that there we found that the Court of Appeals had not erred in any respect. The basis for remand to an agency is the *agency's* error on a point of law, not the reviewing court's. (That the reviewing court erred is irrelevant in light of "the settled rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason,'" *SEC* v. *Chenery Corp.,* 318 U. S. 80, 88 (1943) (quoting *Helvering* v. *Gowran,* 302 U. S. 238, 245 (1937)).) And in *Health Care,* as here, the Board erred in interpreting the test for supervisory status.

## I

In the proceedings before the Board, respondent relied heavily on the fact that two registered nurses (RNs) served as "building supervisors" on weekends, and on the second and third shifts. However, as the Regional Director who considered the evidence noted, the RNs received no extra compensation for serving as building supervisors and did not have keys to the facility. Instead, the only additional responsibility shouldered by the RNs when serving as building supervisors was that of contacting other employees if a shift was not fully staffed according to preestablished ratios not set by the RNs. However, the RNs had no authority to compel an employee to stay on duty or to come to work to fill a vacancy under threat of discipline.

With respect to the RNs' regular duties, while they might "occasionally request other employees to perform routine tasks," they had no "authority to take any action if the employee refuse[d] their directives."[1] App. to Pet. for Cert. 51a. In their routine work, they had no "authority to hire, fire, reward, promote or independently discipline employees or to effectively recommend such action. They did not evaluate employees or take any action which would affect their employment status." Id., at 52a. Indeed, the RNs, even when serving as "building supervisors," for the most part "work[ed] independently and by themselves without any subordinates." Ibid.

Based on his evaluation of the evidence, the NLRB's Regional Director applied "the same test to registered nurses as is applicable to all other individuals in determining supervisory status." Ibid. Under that test, he concluded that "only supervisory personnel vested with 'genuine management prerogatives' should be considered supervisors, and not 'straw bosses, leadmen, set-up men and other minor

---

[1] The RNs did have the authority to file "incident reports, but so [could] any other employee." App. to Pet. for Cert. 51a.

supervisory employees.'" *Id.*, at 53a (quoting *Chicago Me-tallic Corp.*, 273 N. L. R. B. 1677, 1688 (1985)). He did, how-ever, exclude from the bargaining unit 10 specific super-visors including the nursing coordinator. App. to Pet. for Cert. 54a.

Over the dissent of Judge Jones, the Court of Appeals set aside the Board's order. The panel majority first criti-cized the Board for ignoring its "repeated admonition" that the NLRB "'has the burden of proving that employees are not supervisors.'" *Id.*, at 15a. After acknowledging that "whether an employee is a supervisor is a highly fact-intensive inquiry," that majority concluded that the RNs' duties as building supervisors involved "independent judg-ment which is not limited to, or inherent in, the professional training of nurses." *Id.*, at 16a–19a. The panel majority also criticized the NLRB for interpreting the admittedly ambiguous statutory term "independent judgment" incon-sistently with Sixth Circuit precedent.[2]

## II

Although it is not necessary to do so to overturn the Court of Appeals' decision, the NLRB has asked us to reject the Sixth Circuit's interpretation of the term "independent judgment." In contrast to the Sixth Circuit, the NLRB interprets the term "independent judgment" as not includ-ing the exercise of ordinary professional or technical judg-ment in directing less-skilled employees to deliver services in accordance with employer-specified standards.[3] *Provi-*

---

[2] "According to NLRB interpretations, the practice of a nurse super-vising a nurse's aide in administering patient care, for example, does not involve 'independent judgment.' The NLRB classifies these activities as 'routine' because the nurses have the ability to direct patient care by virtue of their training and expertise, not because of their connection with 'management.'" *Id.*, at 17a.

[3] Oddly, the majority in this Court omits one element—namely, "'in accordance with employer-specified standards.'" *Ante*, at 715–716. In so

*dence Hospital,* 320 N. L. R. B. 717 (1996), enforced, 121 F. 3d 548 (CA9 1997); *Nymed, Inc.,* 320 N. L. R. B. 806 (1996); see also, *e. g., Graphics Typography, Inc.,* 217 N. L. R. B. 1047, 1053 (1975), enforced mem., 547 F. 2d 1162 (CA3 1976). The Board's interpretation is a familiar one, which has been routinely applied in other employment contexts. See *Providence,* 320 N. L. R. B., at 717; *Graphics Typography,* 217 N. L. R. B., at 1053. Applying that interpretation, the NLRB has concluded that in some cases the employees in question are supervisors, and that in others they are not.[4] See Brief for Petitioner 17–19, nn. 5–7 (collecting cases); see also Brief for Respondent Kentucky State District Council of Carpenters 36, n. 16 (collecting cases).

The question before us is whether the Board's interpretation is both "rational and consistent with the Act."[5] *NLRB v. Curtin Matheson Scientific, Inc.,* 494 U. S. 775, 796 (1990); see *Fall River Dyeing & Finishing Corp.* v. *NLRB,* 482 U. S. 27, 42 (1987). To my mind, the Board's test is both fully rational and entirely consistent with the Act.

The term "independent judgment" is indisputably ambiguous, and it is settled law that the NLRB's interpretation

doing, it ignores a key nuance in the NLRB's position. That, however, is characteristic of the majority's treatment of the NLRB's position, which is at once more fact specific and far less categorical than the majority makes it out to be.

[4] The majority, however, pays scant heed to the adjudicative record when it asserts that the Board's interpretation would in essence eliminate the supervisory exception with respect to the "responsibly to direct" function. See *ante,* at 714–715.

[5] "[I]n many . . . contexts of labor policy, '[t]he ultimate problem is the balancing of the conflicting legitimate interests. The function of striking that balance to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review.'" *Beth Israel Hospital* v. *NLRB,* 437 U. S. 483, 501 (1978) (quoting *NLRB v. Truck Drivers,* 353 U. S. 87, 96 (1957)).

of ambiguous language in the National Labor Relations Act is entitled to deference.[6] See *NLRB* v. *Health Care and Retirement Corporation*, 511 U. S. 571, 579 (1994) *(HCR)*; *Auciello Iron Works, Inc.* v. *NLRB*, 517 U. S. 781, 787–788 (1996); *Curtin Matheson Scientific, Inc.*, 494 U. S., at 786– 787. Such deference is particularly appropriate when the statutory ambiguity is compounded by the use of one ambiguous term—"independent judgment"—to modify another, equally ambiguous term—namely, "responsibly to direct."

Moreover, since Congress has expressly provided that professional employees are entitled to the protection of the Act, there is good reason to resolve the ambiguities consistently with the Board's interpretation. At the same time that Congress acted to exclude supervisors from the NLRA's protection, it explicitly extended those same protections to professionals, who, by definition, engage in work that involves "the consistent exercise of discretion and judgment in its performance."[7] 29 U. S. C. § 152(12)(a)(ii). As this Court has acknowledged, the inclusion of professional employees and the exclusion of supervisors necessarily gives rise to some tension in the statutory text. Cf. *NLRB* v. *Yeshiva Univ.*, 444 U. S. 672, 686 (1980). Accordingly, if the term "supervisor" is construed too broadly, without regard for the statutory context, then Congress' inclusion of profes-

---

[6] The majority suggests that the Board's interpretation of the term "independent judgment" is particularly problematic in light of this Court's decision in *NLRB* v. *Health Care & Retirement Corp. of America*, 511 U. S. 571 (1994) *(HCR)*. But in *HCR*, this Court concluded that the terms "independent judgment" and "responsibly to direct" were ambiguous, while the term at issue in that case, "in the interest of the employer," was not. *Id.*, at 579.

[7] As the American Nurses Association points out in its *amicus* brief, the scope of nursing practice routinely involves the exercise of judgment and the supervision of others. Brief for American Nurses Association as *Amicus Curiae* 2–6.

sionals within the Act's protections is effectively nullified.[8] See *HCR*, 511 U. S., at 585 (GINSBURG, J., dissenting). In my opinion, the Court's approach does precisely what it accuses the Board of doing—namely, reading one part of the statute to the exclusion of the other.

The Court acknowledges today that deference is appropriate when the Board determines both the degree of discretion required for supervisory status as well as the significance of limitations on the alleged supervisor's discretion imposed by the employer. Thus, in a case like this, a court should not second-guess the Board's evaluation of the authority of the nurses as building supervisors, or of the significance of the employer's definition of that authority.

However, in a *tour de force* supported by little more than *ipse dixit*, the Court concludes that *no* deference is due the Board's evaluation of the "kind of judgment" that professional employees exercise. *Ante*, at 714 (emphasis deleted). Thus, under the Court's view, it is impermissible for the Board to attach a different weight to a nurse's judgment that an employee should be reassigned or disciplined than to a nurse's judgment that the employee should take a patient's temperature, even if nurses routinely instruct others to take a patient's temperature but do not ordinarily reassign or discipline employees. The Court's approach finds no support in the text of the statute, and is inconsistent with our case law. See, *e. g., Yeshiva,* 444 U. S., at 690 ("Only if an employee's activities fall outside the scope of the duties routinely

---

[8] Moreover, so broad a reading seems contrary to congressional intent in enacting the supervisory exception. Rather, the definition of "supervisor" was intended to apply only to those employees with "genuine management prerogatives" so that those employees excluded from the Act's coverage would be "truly supervisory." S. Rep. No. 105, 80th Cong., 1st Sess., pp. 4, 19 (1947), 1 NLRB, Legislative History of the Labor Management Relations Act, 1947, pp. 410, 425 (1948).

performed by similarly situated professionals will he be found aligned with management").[9]

The Court further argues that the Board errs by not applying its limiting interpretation of the term "independent judgment" to all 12 functions identified by the statute as supervisory in nature. *Ante,* at 715–716. But of those 12, it is only "responsibly to direct" that is ambiguous and thus capable of swallowing the whole if not narrowly construed. The authority to "promote" or to "discharge," to use only two examples, is specific and readily identifiable. In contrast, the authority "responsibly to direct" is far more vague. Thus, it is only logical for the term "independent judgment" to take on different contours depending on the nature of the supervisory function at issue and its comparative ambiguity.

Simply put, these are quintessential examples of terms that the expert agency should be allowed to interpret in the light of the policies animating the statute. See, *e. g., Curtin Matheson,* 494 U. S., at 786; *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U. S. 837, 843 (1984). Because the Board's interpretation is fully consistent both with the statutory text and with the policy favoring collective bargaining by professional employees, this Court is obligated to uphold it.

### III

Even if I shared the majority's view that the term "independent judgment" should be given the same meaning when applied to each of the 12 supervisory functions and when applied to professional and nonprofessional employees, I would not simply affirm the judgment of the Court of Appeals. Cf. *NLRB* v. *Bell Aerospace Co.,* 416 U. S. 267, 289–290 (1974); *SEC* v. *Chenery Corp.,* 318 U. S. 80, 87–88 (1943). The Court's rejection of the Board's interpretation of the

---

[9] In fact, in *Yeshiva,* 444 U. S., at 690, this Court concluded that the NLRB's decisions adopting such an approach "accurately capture[d] the intent of Congress."

term "independent judgment" does not justify a categorical affirmance of the Sixth Circuit's decision, which rests in part on an erroneous allocation of the burden of proof.[10]

In any case, I do not agree with the majority's view. Given the Regional Director's findings that the RNs' duties as building supervisors do not qualify them as "supervisors" within the meaning of 29 U. S. C. § 152(11), and that they, " 'for the most part, work independently and by themselves without any subordinates,' " it is absolutely clear that the nurses in question are covered by the NLRA.[11] 193 F. 3d 444, 457 (CA6 1999). The Court's willingness to treat them as supervisors even if they have no subordinates[12] is particularly ironic when compared to the Board's undisturbed decision to deny supervisory status to the other group of professionals employed by respondent—namely, the 20 rehabilitation counselors who supervise the work of 40 rehabilitation assistants.

---

[10] Even under the Court's approach, since the NLRB might well prevail under the correct allocation of the burden of proof, the appropriate course of action in this case would be to return the case to the NLRB for further proceedings. See *NLRB* v. *Bell Aerospace Co.*, 416 U. S. 267, 295 (1974); see also *Electrical Workers* v. *NLRB*, 366 U. S. 667 (1961); *Ford Motor Co.* v. *NLRB*, 305 U. S. 364 (1939). *HCR*, on which the majority relies, see *ante*, at 721–722, is not to the contrary. In that case, unlike in this one, we found no error in the lower court's decision. Here, however, the lower court erred in its allocation of the burden of proof, a fact which would seem to make a remand to the NLRB in order to apply what the majority deems to be the correct legal principle particularly appropriate.

[11] Nor do the RNs exercise any of the other supervisorial functions listed in § 152(11). They play no role in assigning staff to shifts on a permanent basis or in setting the staff-to-resident ratio. App. 18–19, 23–24. As noted above, the RNs, whether functioning in their ordinary capacity or as "building supervisors," do not have authority to hire, fire, reward, promote, or independently discipline employees, or to effectively recommend such action. Nor, for that matter, do they evaluate employees or take action that would affect their employment status.

[12] Neither the licensed practical nurses nor the rehabilitation assistants report to the RNs. *Id.*, at 30, 34, 45, 61.

Accordingly, while I join Part II of the Court's opinion, I respectfully dissent from its holding. I would reverse the judgment of the Court of Appeals.