# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1684

_____

| | | |
|---|---|---|
| Multimedia KSDK, Inc., | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | |
| National Labor Relations Board, | * | |
| | * | |
| Respondent, | * | Petitions for Review from the |
| | * | National Labor Relations Board. |
| International Brotherhood of Electrical | * | |
| Workers, Local Union No. 4, AFL-CIO, | * | |
| | * | |
| Intervenor on Appeal. | * | |

_____

No. 00-1919

_____

| | |
|---|---|
| Multimedia KSDK, Inc., | * |
| | * |
| Respondent, | * |
| | * |
| v. | * |
| | * |
| National Labor Relations Board, | * |
| | * |
| Petitioner. | * |

_____

Submitted:  April 17, 2002

Filed:  September 10, 2002
_____

Before HANSEN, Chief Judge, McMILLIAN, BOWMAN, WOLLMAN, LOKEN, MURPHY, BYE, RILEY, and MELLOY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Multimedia KSDK, Inc. (KSDK) operates a television station broadcasting in St. Louis, Missouri.  In 1997, sixteen producers, four assignment editors, and two tape coordinators employed by KSDK's news department voted to join the International Brotherhood of Electrical Workers, Local No. 4 (the union).

Thereafter, KSDK refused to recognize and bargain with the union, and the National Labor Relations Board (the Board) found that KSDK had thereby violated sections 8(a)(5) and (1) of the National Labor Relations Act (the Act), 29 U.S.C. §§ 151-169, with respect to the assignment editors and producers.  KSDK filed a petition for review of the Board's order.  The Board cross-petitioned for enforcement of its order, and the union intervened in support of the Board's decision.  We denied the petition for review and granted the cross-petition, upholding the Board's decision that KSDK's producers and assignment editors were not supervisors within the meaning of the Act.  Multimedia KSDK, Inc. v. NLRB, 271 F.3d 744 (8th Cir. 2001).

KSDK then filed a petition for rehearing en banc, challenging only that portion of the panel's decision regarding the producers.  We granted the petition for rehearing

and vacated the panel's judgment and opinion.[1]  Because we conclude that the Board employed an improper legal standard in finding that the producers were not statutory supervisors, we grant the petition for review and deny enforcement of the order as it relates to the producers.

## I.

The producers have the overall responsibility for putting together a newscast from planning to air, and each newscast has an individual producer.  The producers attend daily meetings with the executive producer, assignment editor, the assistant news director, and reporters to discuss ideas for news stories.  The producer ultimately decides which stories will be covered and creates a "rundown" for each newscast.  The rundown lists the stories to be covered and the order of presentation.  The rundowns are previewed by one of the executive producers, but the producers can and do change the order and length of the news stories without seeking approval from upper-level management.  Producers do not have to secure approval of the final rundown before the broadcast.

In addition to creating the rundown, producers assign writers, reporters, photographers, and graphic artists to each story.  The producers instruct the other employees as to how the story should be covered, including such things as the desired length of the story, whether it will be shot live, whether it will use a taped interview, what graphics will accompany the story, and more.  If two anchors are involved in the newscast, the producer for that show determines which anchor will read which stories.

---

[1]To the extent that the order granting rehearing en banc vacated the entirety of the panel's judgment and opinion, it is amended to refer only to that portion relating to the producers.

The rundown for each show generally follows a format typical of the station's newscasts, including a set number of commercial breaks, a sports segment, and a weather segment. The producers have the authority, however, to alter the standard format as they deem necessary, including changing the number of the commercials during a commercial break. The news producers do not produce the sports and weather segments, but do determine their length and placement within individual newscasts.

In addition to setting the format for the newscasts, the producers are responsible for the accuracy and style of the individual stories reported. Thus, the producers review scripts for the stories and have the authority to instruct the writers to make changes, even specifying how to do a re-write. Similarly, they review the graphics produced by the graphic artists and have the authority to require changes. Producers can question reporters regarding the factual accuracy of stories, including inquiring about their sources of information. The producers also instruct the director responsible for the technical production of the broadcast how stories should be presented, determining such things as the music and graphics used for a particular story. If a producer is not satisfied with any of the work done on a story, he or she can decide to drop the story from the newscast.

During the broadcast, the producers sit in the control room next to the broadcast studio. They give the anchors various instructions during the newscast. During the broadcast, producers can make changes to the script, add or drop stories, or change the order of the broadcast.

The producers have the authority to authorize overtime as needed, but they cannot require any employees to work overtime. They also cannot hire, fire, or discipline employees. If a producer has a problem with a particular employee, he or she must present the issue to more senior management, who then conducts an independent review of the issue.

## II.

Section 2(3) of the Act states that the "term employee . . . shall not include . . . any individual employed as a supervisor." 29 U.S.C. § 152(3). Because only employees may organize and engage in collective bargaining, 29 U.S.C. § 157, excepting supervisors from the definition of "employee" excludes them from the protections of the Act. Section 2(11) defines "supervisor" as:

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11).

The definition set forth in § 2(11) has three components. NLRB v. Health Care & Ret. Corp. of Am., 511 U.S. 571, 573-74 (1994). First, the employee must be acting in the "interest of the employer." Id. Second, the employee must have actual authority to accomplish one of the enumerated functions. Beverly Enters.-Minnesota, Inc. v. NLRB, 266 F.3d 785, 788 (8th Cir. 2001). This requirement is read disjunctively; thus, an employee possessing the authority to exercise any one of the enumerated functions satisfies the second component of the definition. Id. Moreover, the actual exercise of the enumerated power is irrelevant so long as the authority to do so is present. Id. Third, the authority must involve the use of independent judgment and be more than routine or clerical in nature. Id.

We will uphold the Board's findings regarding supervisory status under the Act so long as they are supported by substantial evidence on the record as a whole. Beverly Enters. v. NLRB, 148 F.3d 1042, 1045 (8th Cir. 1998). Although the Board has broad authority to construe provisions of the Act, we will enforce the Board's order only if it has "correctly applied the law." NLRB v. Young Women's Christian Ass'n of Metro. St. Louis, 192 F.3d 1111, 1116 (8th Cir. 1999).

We must first determine the grounds the Board relied upon in holding that the producers were not supervisors, because we can enforce its order only on the same grounds it relied on. Beverly Enters., 266 F.3d at 789. The brevity of the Board's one-paragraph decision makes it somewhat difficult to determine what theory the Board used as the basis for its order. The Regional Director relied on Providence Hospital, 320 N.L.R.B. 717 (1996), in finding that because they used independent judgment only as to the professional or technical aspects of their own work, the producers were not supervisors. In its decision affirming the Regional Director, the Board cited only two prior decisions as authority, King Broadcasting Co., 329 N.L.R.B. 378 (1999), and McGraw-Hill Broadcast Co., Inc., 329 N.L.R.B. 454 (1999). In both King Broadcasting and McGraw-Hill, the Board found that television news producers with job responsibilities similar, although not identical, to KSDK's producers did not exercise independent judgment in the assignment or direction of other employees. The Board stated that "the authority of an individual employee to direct another to perform discrete tasks stemming from the directing employee's experience, skills, training, or position is not supervisory authority." King Broad., 329 N.L.R.B. at 383; see also McGraw-Hill, 329 N.L.R.B. at 457. Because they did not exercise independent judgment, they were not supervisors, but members of a team working together to produce a single product. King Broad., 329 N.L.R.B. at 383; McGraw-Hill, 329 N.L.R.B. at 457. In light of the Board's reliance on these two decisions and its conclusory affirmance of the Regional Director's decision, we conclude that the Board's order rested on the ground that because they used judgment

stemming from their "own experience, skills, training, or position," the producers did not exercise independent judgment.

This test, however, conflicts with the Supreme Court's decision in NLRB v. Kentucky River Cmty. Care, Inc., 121 S. Ct. 1861 (2001). In Kentucky River, the Court held that the Board could not find a lack of independent judgment merely because the judgment was based on "professional or technical skill or experience." Id. at 1868. The error in that standard is its exclusion of certain kinds of judgment from the definition of independent judgment, whereas the statute only "introduces the question of degree of judgment." Id. at 1867-68. The Court stated that the Board's "professional or technical" test inserted "a startling categorical exclusion into statutory text that does not suggest its existence." Id. at 1867. Furthermore, the Court specifically rejected the test employed by Providence Hospital and relied upon by the Regional Director in this case. Id. at 1868 n.1.

The Board's decision in this case rests upon a categorical exclusion similar to that rejected in Kentucky River. Section 2(11) of the Act does not exclude judgment based on an employee's "experience, skills, training, or position" from the definition of independent judgment. See Public Serv. Co. of Colorado v. NLRB, 271 F.3d 1213, 1218-19 (10th Cir. 2001) (denying enforcement of Board's order where Board held that employees' exercise of judgment related only to their "own responsibilities, [was] based on their experience and technical expertise, [and did] not evidence any control over personnel"). As with professional or technical skill or experience, one must wonder "[w]hat supervisory judgment worth exercising . . . does not rest on" the supervisor's experience, skills, training, or position. Kentucky River, 121 S. Ct. at 1868.

The Supreme Court's rejection of the legal standard utilized by the Board precludes us from enforcing the Board's order. See Beverly Enters., 266 F.3d at 789. The appropriate "method for determining the propriety of a remand," described by the

Supreme Court in <u>Kentucky River</u> and <u>Heath Care</u>, limits a remand to the Board to cases in which the Board offers an alternative theory on which to uphold its decision. <u>Kentucky River</u>, 121 S. Ct. at 1871; <u>Health Care</u>, 511 U.S. at 584. The Board has not requested a remand as it did in <u>Beverly Enters.</u>, and we do not choose to comb the Board's brief or the precedents it cites for possible alternative theories upon which the Board might properly rely if the case were remanded to it.

The petition for review is granted and the cross-petition for enforcement of the Board's order, except for that portion relating to the assignment editors, is denied.

BYE, Circuit Judge, with whom McMILLIAN, MURPHY, and MELLOY, Circuit Judges, join, dissenting.

I agree with much of the court's decision. The National Labor Relations Board apparently reasoned that KSDK producers are not supervisors because their use of independent judgment was limited to professional and technical aspects of their own work. The Board's attempt to eliminate professional and technical judgment from the "independent judgment" calculus has now been rejected by the Supreme Court, <u>NLRB v. Kentucky River Cmty. Care, Inc.</u>, 532 U.S. 706, 713-20 (2001), and so, as our court ably explains, we cannot approve the Board's reasoning on its own terms.

Appreciating this tension between the Board's decision and <u>Kentucky River</u>, the panel unearthed an independent basis for enforcing the Board's order. The panel held the Board's order could be enforced on the alternative ground that "employees [such as the KSDK producers] engaged in a largely collaborative enterprise do not exercise 'independent judgment' of the type envisaged in the Act." <u>Multimedia KSDK, Inc. v. NLRB</u>, 271 F.3d 744, 751 (8th Cir. 2001). This collaboration theory traces its lineage to several Board decisions and a Fifth Circuit decision, which held that television station producers "do not function as supervisors, but are part of an integrated production team, each member of which is independently capable of

executing his assignment." NLRB v. KDFW-TV, Inc., 790 F.2d 1273, 1278 (5th Cir. 1986) (quoting an earlier Board decision). Recent events have overtaken the thrust of the panel opinion, however. In Beverly Enterprises-Minnesota, Inc. v. NLRB, 266 F.3d 785, 789 (8th Cir. 2001), we explained that a Board order may not be upheld on an alternative ground, a decision that now precludes us from enforcing the Board's order in reliance on the collaboration theory.

Though I agree with the en banc court that we may not enforce the Board's order on the strength of its own reasoning, I disagree that we should deny enforcement at this juncture. Instead, I believe we should exercise our discretion to remand this case to the Board for further review and consideration. The court's opinion seems to suggest we may not remand a case to the Board unless the Board itself "offers an alternative theory on which to uphold its decision" or affirmatively requests a remand. Ante at 8. The court cites Kentucky River and NLRB v. Health Care & Retirement Corp. of Am., 511 U.S. 571, 584 (1994), to support this proposition, but neither case strictly limits the power of federal courts in the manner suggested. In both cases, the Supreme Court merely declined to exercise its discretion to remand. The Court did not presume to lack the power to remand altogether. Indeed, the Court has previously recognized federal courts' discretion to remand as circumstances and equity require. See NLRB v. Jones & Laughlin Steel Corp., 331 U.S. 416, 428 (1947); Ford Motor Co. v. NLRB, 305 U.S. 364, 373-74 (1939).

Though the court elects not to remand this case to the Board, I believe there are two good reasons to do so. First, I harbor few doubts that the Board intended to rely on the collaboration theory described above. A remand would permit the Board to make its reliance explicit. The Board never disavowed the collaboration theory (and in fact appeared to favor its application) in responding to the station's petition for rehearing en banc and at oral argument before the full court. The Board is entitled to take the initial stab at reconciling its 29 U.S.C. § 152(11) jurisprudence with

Kentucky River, since the Board, not federal courts, must delineate the "infinite gradations" of workplace responsibility within a given industry. Schnuck Markets, Inc. v. NLRB, 961 F.2d 700, 703 (8th Cir. 1992). It makes sense to offer the Board a chance at reconciliation in *this* case, rather than waiting for fresh disputes to arise, especially when the parties to this case are so well-equipped to assist the Board in resolving the matter. Certainly we "may adjust [our] relief to the exigencies of the case in accordance with the equitable principles governing judicial action." Ford Motor, 305 U.S. at 373.

Second, counsel for the Board seemed to suggest at oral argument that Kentucky River does not prefigure a sea-change in the Board's approach to deciding supervisor cases. I took this to mean the Board is receptive to the massive hint the Supreme Court dropped in Kentucky River. The Court proposed that—in performing the three-step analysis required by § 152(11)—the Board shift its traditional emphasis away from the "independent judgment" component to allow more reasoned development of the jurisprudence underpinning the "functions" component.

> Perhaps the Board could offer a limiting interpretation of the supervisory function of responsible direction by distinguishing employees who direct the manner of others' performance of discrete *tasks* from employees who direct other *employees*, as § 152(11) requires. Certain of the Board's decisions appear to have drawn that distinction in the past, see, e.g., Providence Hospital, 320 N.L.R.B. 717, 729 (1996).

Kentucky River, 532 U.S. at 720 (emphasis in original).

In deciding supervisor cases, the Board infrequently devotes much attention to the manner in which particular employees fulfill one or more of the twelve enumerated tasks. The Board often assumes that employees perform one of those tasks, only to decide the case based upon the employees' exercise of independent

judgment.  See, e.g., <u>Providence Hosp.</u>, 320 N.L.R.B. 717, 727 (1996) ("[W]e conclude that whatever authority the charge nurses have to 'assign' RNs and other staff members . . . is not authority that requires the use of independent judgment within the meaning of Section 2(11).  Accordingly, it is unnecessary to reach the issue of the exact parameters of the term 'assignment' under Section 2(11)."); <u>id.</u> at 728 ("The Board has only rarely sought to define the parameters of 'responsibly to direct.' . . . Instead, the Board generally has treated 'responsibly to direct' in conjunction with Section 2(11)'s qualifying language that the exercise of any statutory indicia 'is not of a merely routine or clerical nature, but requires the use of independent judgment.'").

The Board's practice of disregarding (or perhaps short-changing) one full step of the § 152(11) analysis is regrettable.  The enumerated tasks *do* make a difference, as this case reflects.  Much of the Board's argument on appeal is really devoted to proving that KSDK producers neither assign workers (because another manager sets employee schedules), nor responsibly direct them (because, for example, producers are not held accountable for writers' lapses, that responsibility is the province of the head writer).  I find these arguments persuasive, but the Board did not make them in issuing its order.  A remand would afford the Board a much-needed opportunity to reassess the importance of defining and interpreting the enumerated tasks in each case, just as I read the Court's opinion in <u>Kentucky River</u> to suggest.

For these reasons, I would prefer to remand this case to the Board for further consideration rather than refusing to enforce the Board's order altogether.  Despite my agreement with much of the court's opinion, I therefore respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.