**NATIONAL LABOR RELATIONS BOARD., Petitioner–Cross–Respondent,**

v.

**NATIONAL STEEL SUPPLY, INC., Respondent–Cross–Petitioner.**

Docket Nos. 05–5006–ag, 05–5917–ag.

United States Court of Appeals, Second Circuit.

Nov. 14, 2006.

Jonathan J. Spitz, Jackson Lewis LLP, Atlanta, GA, for petitioner.

Ruth E. Burdick (Ronald Meisburg, General Counsel, and Julie B. Brodio, Supervisory Attorney, on the brief), National Labor Relations Board, Washington, DC, for respondent.

PRESENT: PIERRE N. LEVAL and JOSÉ A. CABRANES, Circuit Judges, JED S. RAKOFF, District Judge.*

## SUMMARY ORDER

The National Labor Relations Board ("the Board") applies to this Court for enforcement of its Decision and Order dated June 30, 2005 affirming the decision of Administrative Law Judge ("ALJ") Raymond P. Green dated December 23, 2004.

* The Honorable Jed S. Rakoff, District Judge for the Southern District of New York, sitting by designation.

National Steel Supply, Inc. ("National Steel") cross-petitions for review of the Board's order. We assume the parties' familiarity with the facts and the procedural history of this case.

Our review of orders issued by the Board is "quite limited." *NLRB v. Katz's Delicatessen, Inc.*, 80 F.3d 755, 763 (2d Cir.1996). "We must enforce the Board's order[s] where its legal conclusions are reasonably based, and its factual findings are supported by substantial evidence on the record as a whole." *Id.* The Board's "power to issue remedial orders is a broad discretionary one, subject to limited judicial review." *TNT USA Inc. v. NLRB*, 208 F.3d 362, 366 (2d Cir.2000).

National Steel's most viable arguments on appeal are that the Board erred in (1) finding that Eric Atalaya was not a "supervisor" within the meaning of the National Labor Relations Act ("the Act"), 29 U.S.C. § 152(11); (2) concluding that the striking employees made an "unconditional" offer to return to work; and (3) issuing a remedial bargaining order against National Steel. As explained below, each of these claims is without merit.

■ First, the Board's conclusion that Atalaya was not a supervisor within the meaning of the Act is supported by substantial evidence in the record. In particular, the ALJ relied on several proper grounds in support of his conclusion, including, *inter alia* his observations that (1) Atalaya's assigning of work to employees was "routine and lacking in the exercise of independent judgement," (2) Atalaya "credibly denied" ever having discharged any employees, and (3) Atalaya's directions to employees regarding daily scheduling of their lunch breaks and dismissal from work were "routine at best."

National Steel's argument that the ALJ nevertheless erred because he failed to specifically reject testimony that Atalaya

had the "*authority*," 29 U.S.C. § 152(11) (emphasis added), to discharge employees is unavailing. The ALJ explicitly noted in his opinion that "[National Steel]'s witnesses testified that Atalaya had authority to discharge employees and claimed that he had done so. . . ." Immediately thereafter, and in the same paragraph, the ALJ found that specific statements by these witnesses regarding Atalaya's exercise of his purported discharge authority lacked support and would not be credited. Because the burden of proof lies with the party who claims that an individual is a supervisor within the meaning of the Act, *see NLRB v. Kentucky River Community Care, Inc.*, 532 U.S. 706, 711, 121 S.Ct. 1861, 149 L.Ed.2d 939 (2001), the fact that the ALJ did not similarly reject specific statements about whether Atalaya possessed authority to discharge employees was not error. Rather, we conclude that the ALJ's finding that Atalaya was not a "supervisor" is supported by "substantial evidence on the record considered as a whole." *NLRB v. Quinnipiac College*, 256 F.3d 68, 74 (2d Cir.2001); *see also Superior Bakery, Inc. v. NLRB*, 893 F.2d 493, 496 (2d Cir.1990) ("[B]ecause of the Board's expertise in deciding who is and who is not a supervisor within the meaning of . . . the Act, the Board's findings in this are entitled to special weight.") (internal quotation marks omitted).

■ Substantial evidence also supports the Board's conclusion that the striking employees made an "unconditional" offer to return to work. *See Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 278, 76 S.Ct. 349, 100 L.Ed. 309 (1956) (affirming imposition of reinstatement and backpay under the Act where an employer failed to reinstate employees who had made an "unconditional" offer to return to work). National Steel urges this Court to conclude that the statement purportedly made by a un-

**12**

ion organizer to National Steel Vice President Joseph Anza did not constitute an unconditional offer but merely signaled his willingness to negotiate. Although National Steel's interpretation is plausible, it is not the only reasonable interpretation permitted by the facts of this case. Accordingly, we will not disturb the Board's finding on this issue. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (holding that substantial evidence review does not mean courts may choose "between two fairly conflicting views even [when] the court would justifiably have made a different choice had the matter been before it *de novo* ").

■ Finally, the Board did not abuse its discretion by issuing a remedial bargaining order. To the extent National Steel argues that the Board erred by not considering the effects of the earlier Section 10(j) temporary consent judgment, this argument was not raised before the Board. We therefore lack jurisdiction to consider it on appeal. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board ... shall be considered by the court"). Assuming *arguendo* it was raised, however, the argument—considered along with National Steel's other arguments—is without merit because the Board permissibly found based on the circumstances of this case that *"traditional remedies* cannot erase the coercive effects of [National Steel's] conduct, making the holding of a fair election impossible." (emphasis added).

Moreover, the Board relied on (1) the "swift and severe" nature of the action taken by National Steel, (2) the fact that 85% of the unit was affected, (3) the likelihood of a "lasting effect" of the "fear" felt by employees, (4) the "short time period between the unfair labor practices and the issuance of the order" and (5) the Board's

assessment that "even without evidence that Respondent continued to engage in antiunion activity" a bargaining order was warranted, which all provide ample support for the Board's exercise of its discretion. *See Kaynard v. MMIC, Inc.* 734 F.2d 950, 954 (2d Cir.1984) (holding that where (as here) the Board justifies imposition of a bargaining order on its conclusion that the circumstances present an "exceptional" case marked by "outrageous and pervasive unfair labor practices", "extensive analysis of other factors is not required") (internal quotation marks omitted); *accord. NLRB v. Gissel Packing Co.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969).

## CONCLUSION

We have considered National Steel's remaining claims and find them to be without merit. Accordingly, and substantially for the reasons set forth in the decisions of the Board and the ALJ, the application for enforcement is **GRANTED** and the cross-petition for review is **DENIED.**