[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an appeal of the Petitioner State of Rhode Island Fire Marshal's Office (Fire Marshal's Office) from a decision of the State of Rhode Island Labor Relations Board (Board). The Fire Marshal's Office appeals the decision, finding that the positions of Chief Deputy Fire Marshal, Chief of Fire Safety Inspections, and Chief of Fire Investigations are not supervisory as a matter of law, and, as such, are eligible for inclusion within the proposed bargaining unit. Jurisdiction in this Court is pursuant to G.L. 1956 §§ 28-7-29 and 42-35-15.
 FACTS AND TRAVEL
The Fire Marshal's Office has twenty-one full time equivalent positions. The Rhode Island Laborers' District Council, on behalf of Local Union 1033, (Union) represents all of the positions except for those of Fire Marshal, Chief Deputy Fire Marshal, Chief of Fire Investigations, and Chief of Fire Safety Inspections. The Chief Deputy Fire Marshal ranks under the State Fire Marshal on the organizational hierarchy chart and reports directly to him. The Chief of Fire Investigations and the Chief of Fire Safety Inspections are placed just below the Chief Deputy State Fire Marshal, and each position has four employees under it.
The Union filed a Petition by Employees for Investigation and Certification of Representatives with the Board on June 5, 2002. Pursuant to § 28-7-16, the Union sought recognition as the exclusive bargaining representative of the Chief Deputy Fire Marshal, Chief of Fire Safety Inspections, and Chief of Fire Investigations in the Fire Marshal's Office. On August 15, 2002, an informal conference was held with the Administrator of the board. A formal hearing was held on January 28, 2003, at which the Union presented two witnesses: the Chief Deputy Fire Marshal and the Chief of Fire Safety Inspections. The parties agreed to take the testimony of the Chief of Fire Investigations by deposition on May 21, 2003.
The Board rendered a decision on October 15, 2003, entering an Order directing an election by secret ballot to be conducted within sixty days under the supervision of the Board or its agents. The Board held the secret ballot election on November 18, 2003. After a unanimous decision in favor of Union representation, the Board certified on November 25, 2003 that the Union be the exclusive bargaining representative of the Chief Deputy Fire Marshal, Chief of Fire Safety Inspections, and Chief of Fire Investigations.
On December 4, 2003, the Fire Marshal's Office filed a complaint in Superior Court pursuant to § 42-35-15, naming both the Board and the Union as defendants. The Union joined in the Board's brief. The Fire Marshal's Office timely seeks the reversal of the Board's decision and the exclusion of each challenged position from the bargaining unit.
 STANDARD OF REVIEW
The Superior Court has appellate jurisdiction to review a decision of the Board and other state administrative agencies pursuant to § 42-35-15. Section 42-35-15 provides:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error or [sic] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an administrative agency decision under § 42-35-15, the Superior Court acts in the manner of an appellate court with a limited scope of review. Mine Safety Appliances v. Berry, 620 A.2d 1255, 1259
(R.I. 1993). This review is confined "to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston Ambulatory Surgical Assocs.,Ltd. v. Nolan, 755 A.2d 799, 805 (R.I. 2000) (quoting Barrington Sch.Comm. v. R.I. State Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992)). This Court must uphold the Board's decision if it based its decision on sufficient and competent evidence in the record, JohnstonAmbulatory, 755 A.2d at 805 (citing Barrington Sch. Comm.,608 A.2d at 1138), and the trial judge "may not substitute his or her judgment for that of the administrative agency," Bunch v. Bd. of Review,690 A.2d 335, 337 (R.I. 1997). This is required even when this Court, after reviewing the certified record and evidence, is inclined to view the evidence differently than the Board. Berberian v. Dep't of EmploymentSec., 414 A.2d 480, 482 (R.I. 1980). "Questions of law, however, are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." Narragansett Wire Co. v. Norberg,118 R.I. 596, 607, 376 A.2d 1, 6 (R.I. 1977).
When a trial judge reviews a decision of an agency, the judge can affirm the decision, reverse the decision, or remand the case for further review. Birchwood Realty, Inc. v. Grant, 627 A.2d 827, 834 (R.I. 1993) (citing § 42-35-15(g)). The trial judge may reverse the findings of the agency when the Board's conclusions and the findings of fact are not supported by the evidence in the record or from the reasonable inferences drawn from such evidence. See Bunch, 690 A.2d at 337. A Court cannot uphold a decision of an administrative agency if, while enough evidence exists in the record to support the decision of the Board, reasons given by the Board "do not build an accurate and logical bridge between the evidence and the result." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996). "[T]he labor board cannot use its unquestionable power to assess the credibility of witnesses to posit factual findings unsupported by any evidence. . . ." State v. R.I. State Labor Relations Bd., 694 A.2d 24, 28
(R.I. 1997). This Court will not uphold an agency's decision when it "attempts to pass off factually unsupported and legally impermissible inferences in the name of credibility determinations and administrative factfinding. Indeed, to do so would be to abdicate [the reviewing Court's] judicial-review function." Id. at 30.
 THE INCLUSION OF THE POSITIONS IN THE BARGAINING UNIT
The Municipal Employees' Arbitration Act, §§ 28-9.4-1 to 28-9.4-20, (Act) declares that it is "the public policy of this state to accord to municipal employees the right to organize, to be represented, to negotiate, and to bargain on a collective basis with municipal employers." Section 28-9.4-1. The Act defines municipal employees as "any employee of a municipal employer, whether or not in the classified service of the municipal employer." Section 28-9.4-2(b). The Act, however, excludes supervisory employees from the definition. Section28-9.4-2(b)(4). An excluded employee is not permitted to bargain collectively with municipal employers because "the inclusion of . . . supervisory employees in a collective-bargaining unit would create a conflict of interest that would upset the delicate balance of power between management and labor." R.I. State Labor Relations Bd.,694 A.2d at 1189.
The Rhode Island Supreme Court has declared that it looks to federal labor law for guidance in resolving labor disputes. DiGuilio v. R.I.Bhd. of Corr. Officers, 819 A.2d 1271, 1273 (R.I. 2003). Rhode Island has also adopted the federal definition of supervisory employee. R.I.Laborerers' Dist. Council v. City of Providence, 796 A.2d 443, 446 (R.I. 2002). To determine whether an employee is supervisory, this Court will apply the definition of "supervisor" set forth in the National Labor Relations Act, 29 U.S.C. § 152(11):
 "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."
The duties listed in § 152(11) are disjunctive, Hosp.Gen. Menonita v. NLRB, 393 F.3d 263, 267 n. 5 (1st Cir. 2004); therefore, employees are statutorily supervisors if they have the authority to engage in any one of the above-listed functions, NLRB v. Ky. River Cmty. Care,Inc., 532 U.S. 706, 713 (2001) (citing NLRB v. HealthCare Ret. Corp. of Am., 511 U.S. 571, 573-74
(1994)). The employee need not actually perform the supervisory duties; if the employee has the authority to perform such duties, the position is supervisory.Glenmark Assocs., Inc. v. NLRB, 147 F.3d 333, 338 (4th Cir. 1998); Schnurmacher Nursing Home v. NLRB, 214 F.3d 260,264 (2d Cir. 2000). An employee performing one of the twelve functions with judgment that "possesses a sufficient degree of independence" will have supervisory status. Ky. River Cmty. Care, Inc., 532 U.S. at 716.
The Fire Marshal's Office argues that the positions in question are all supervisory and that the Board erred in its conclusions concerning all three positions. The Board argues that the record supports its findings of fact. The Board further contends that its findings support its legal conclusion that the positions are not supervisory. Specifically, the Board found that the employees did not exert any of the statutorily enumerated indicators of a supervisory position, and that any assignments or direction given by the employees was not based upon their independent judgment.
All three job descriptions for the positions in question contain the following language:
 "SUPERVISION RECEIVED: Works under the direction of a superior with wide latitude for the exercise of initiative and independent judgment; work is reviewed for results attained and for conformance to codes, laws, regulations and policies.
 SUPERVISION EXERCISED: Plans, organizes, coordinates, supervises and reviews the work of a staff of professional, technical, and clerical personnel."
(Pet.'s Ex. I-K.) Whether the employees are actually supervisors, however, depends on whether they exercise independent judgment because "even an enumerated power must involve the exercise of independent judgment in order to brand the holder of the power as a supervisor."Telemundo de P.R. v. NLRB, 113 F.3d 270, 273-74 (1st Cir. 1997). The term "`independent judgment' is ambiguous with respect to the degree of discretion required for supervisory status." Ky. River Cmty. Care,Inc., 532 U.S. at 713 (emphasis removed). It is "within the Board's discretion to determine, within reason, what scope of discretion qualifies" as supervisory. Id.
(emphasis added). When an "agency's interpretation goes beyond the limits of what is ambiguous and contradicts what in [this Court's] view is quite clear," this Court can overturn the agency's decision. See Whitman v. Am.Trucking Ass'n, Inc., 531 U.S. 457, 481 (2001). Courts have rejected a Board's interpretation of "independent judgment" when the Board focuses on the clerical or routine nature of the judgment, instead of its independent nature, Ky. River Cmty. Care, Inc.,532 U.S. at 714, and when the Board attempts to narrowly interpret statutory requirements, Public Serv. Co. v.NLRB, 271 F.3d 1213, 1221 n. 5 (10th Cir. 2001) (listing circuit cases in which Labor Boards have been overturned for narrowly interpreting statutory requirements).
 Chief Deputy Fire Marshal
The Fire Marshal's Office argues that the position of Chief Deputy Fire Marshal must be excluded from the bargaining unit because it is a supervisory position. The Board contends that the Chief Deputy Fire Marshal, despite its job description suggesting "a position of greater latitude and responsibilities," is under the authority and "tight control" of the Fire Marshal. The Board argues that the Fire Marshal delegates no real supervisory authority to the Chief Deputy Fire Marshal, and that the Chief Deputy Fire Marshal exerts no independent judgment because his decision-making authority is limited to routine or clerical matters.
The Chief Deputy Fire Marshal, R. Michael DiMascolo, assists the Fire Marshal in the operation of the Division of Fire Safety. (Bd. Decision, Pet.'s Ex. I.) The divisions within the Fire Marshal's office, including the Division of Fire Safety Inspections and the Division of Fire Investigations, report to Mr. DiMascolo. (Bd. Decision, Pet.'s Ex. B at 5; Bd. Hr'g at 10; Serbst Dep. at 17.) The Board found that Mr. DiMascolo's duties include ensuring that all departments are performing their functions, planning, organizing, coordinating, supervising, and reviewing the work of the staff, and "coordinating the implementation of state and federal fire codes, laws, regulations, and policies relating to fire safety." (Bd. Decision, Pet.'s Ex. B at 5.) The Board further found that after an employee has received approval from his or her division chief for vacation time, the matter is forwarded to the Chief Deputy Fire Marshal or the Fire Marshal to sign the request, as required by the state personnel department. (Bd. Decision, Pet.'s Ex. B at 4; Bd. Hr'g at 67.)
The Board made a number of findings with regard to the Chief Deputy Fire Marshal's responsibility to act as the Fire Marshal in his absence. The Board found that Mr. DiMascolo acted as the Fire Marshal on 12-15 occasions when the Fire Marshal was ill, on vacation, or attending seminars or educational seminars. (Bd. Decision, Pet.'s Ex. B at 4.) The Board also found that the Fire Marshal testified that Mr. DiMascolo has the "full capacity within which to operate the office of the Fire Marshal" when acting as the Fire Marshal, and that the Fire Marshal has not discussed the extent of Mr. DiMascolo's authority during the Fire Marshal's absence. (Bd. Decision, Pet.'s Ex. B at 4.)
Although not mentioned in the Board's findings, the record also reflects other relevant evidence concerning the position of Chief Deputy Fire Marshal serving in the capacity of Fire Marshal. Mr. DiMascolo testified that he serves in the capacity of the Fire Marshal when the Fire Marshal is out, but qualified his statement by saying that "anything that comes up," except for routine functions, must be cleared with the Fire Marshal. (Bd. Hr'g at 32.) The Fire Marshal testified that he requests the Deputy contact him "when anything important
happens," such as a death. (Bd. Hr'g at 58 (emphasis added).) Mr. DiMascolo testified that the Fire Marshal has told him to "clear everything" through the Fire Marshal, a condition that is not included in the letters sent to the governor informing him of the Fire Marshal's absence. (Bd. Hr'g at 32-33.) The Fire Marshal testified that all of his statutory duties and responsibilities are transferred to the Chief Deputy Fire Marshal in his absence, and that in requesting Mr. DiMascolo contact him, he does not take the responsibility away from the Chief Deputy Fire Marshal. (Bd. Hr'g at 79.)
Furthermore, the Fire Marshal testified that he "left it up to the discretion" of the Chief Deputy Fire Marshal when he felt he should contact the Fire Marshal. (Bd. Hr'g at 79.) The Fire Marshal said that his employees "have broad spectrum of decision making, and I expect them to notify me when it's something serious that I am totally responsible for at the end. . . ." (Bd. Hr'g at 87.) The Fire Marshal has asked to be notified so that he has knowledge of what is going on in the office, not to prevent the Chief Deputy Fire Marshal from any decision-making authority. (See
Bd. Hr'g at 87.) The Fire Marshal also testified that although the grant of authority during the Fire Marshal's absence would not include the power to fire, it would include the ability to hire, or to transfer employees subject to the same conditions the Fire Marshal is subject to, should such action be required. (Bd. Hr'g at 79-80.) Additionally, the Chief of Fire Investigations testified that when the Fire Marshal was not in the office, Mr. DiMascolo was in charge. (Serbst Dep. at 26.)
The Board final finding of fact was
 "[d]espite the Chief Deputy Fire Marshall's [sic] job description, which suggests a position of greater latitude and responsibilities, it is clear to this Board, from the testimony on this case, that the Fire Marshall [sic] retains tight control on all aspects of his office and delegates no real supervisory authority to any employee, including Mr. DiMascolo — the `second-in-command.'"
This finding is clearly erroneous in light of the entire factual record. "The mere fact that an action is subject to review and to being countermanded by a higher-up employee does not alone mean that the acting employee is not a supervisor." NLRB v. Hilliard Dev. Corp., 187 F.3d 133,146 (1st Cir. 1999) (citing NLRB v. Metro. Life Ins. Co., 405 F.2d 1169,1177 (2d Cir. 1968)). The Chief Deputy Fire Marshal's duties, when he is acting as Fire Marshal, entail more than performing routine tasks and conveying boilerplate instructions. His duties clearly can be distinguished "from `a dispatcher who assigns employees and equipment according to a relatively simple pre-programmed plan' developed by the employer." Telemundo de P.R., 113 F.3d at 276 (citing Me. Yankee AtomicPower Co. v. NLRB, 624 F.2d 347, 363 (1st Cir. 1980)). Viewing his duties in the totality of the circumstances, the Chief Deputy Fire Marshal's duties are not perfunctory and routine. He has the authority to act, without the Fire Marshal's approval, if needed. Cf. Edward Street DaycareCtr., Inc. v. NLRB, 189 F.3d 40, 49 (1st Cir. 1999) (If problem arises, Head Teachers must contact the Executive Director, Coordinator for Social Services/Training, or anyone on the Board of Directors, and Head Teachers cannot make any decisions on their own.). Furthermore, although Mr. DiMascolo tried to minimize his authority by stating he had to "clear everything" with the Fire Marshal, he could not think of one example of something he would have to clear with the Fire Marshal unrelated to the hiring, firing, or transferring of employees. (Bd. Hr'g at 21-22.)
The record reflects that the position of Chief Deputy Fire Marshal is clearly that of a supervisor as defined by the Act. This Court thus finds that the Board's determination that Mr. DiMascolo was not a supervisor was clearly erroneous in view of the reliable, probative, and substantial evidence on the entire record.
 Chief of Fire Safety Inspections
The Fire Marshal's Office argues that the Chief of Fire Safety Inspections, William Howe, must be excluded from the bargaining unit because his position is also supervisory. The Board argues that the authority to responsibly direct employees exercised by the Chief of Fire Safety Inspections does not require the use of independent judgment and that his decision-making authority was limited to merely routine or clerical matters.
In its findings, the Board indicated that the Chief of Fire Safety Inspections has supervisory powers. The Board found that the Chief of Fire Safety Inspections plans, organizes, coordinates, supervises, and reviews the work of his staff in conducting fire safety inspections and surveys. (Bd. Decision, Pet.'s Ex. B at 6.) If his staff wants to take a vacation or personal day, he must "sign off" on their request. (Bd. Decision, Pet.'s Ex. B at 6; Bd. Hr'g at 45.) The Board also found that Mr. Howe has participated in conducting interviews for potential Fire Investigators. (Bd. Decision, Pet.'s Ex. B at 7.) At the conclusion of the interviews, the Board found that Mr. Howe "believes" that the names are submitted to the Fire Marshal with "some type of ranking." (Bd. Decision, Pet.'s Ex. B at 7.)
The Board found that Mr. Howe interacts with the other fire inspectors on a daily basis. (Bd. Decision, Pet.'s Ex. B at 7.) The Fire Marshal testified that Mr. Howe has the overall responsibility for the division of Fire Safety Inspections. (Bd. Hr'g at 62.) The Chief Deputy Fire Marshal testified also that it is Mr. Howe's responsibility for coordinating inspections. (Bd. Hr'g at 29.) "[A]n employee is a supervisor under the [federal] statute if he is held responsible for the work, and errors, of the employees beneath him." Hosp. Gen. Menonita,393 F.3d at 268 (citing Me. Yankee Atomic Power Co., 624 F.2d at 361). Moreover, an individual who is "`answerable for the discharge of a duty or obligation'" has supervisory status. Edward Street Daycare Ctr.,Inc., 189 F.3d at 48 (quoting Me. Yankee Atomic Power Co.,624 F.2d at 361). The Fire Marshal further testified that he relies on Mr. Howe to resolve personnel problems that arise with Mr. Howe's employees. (Bd. Hr'g at 65.)
The Board argues that Mr. Howe does not exercise his independent judgment because it found that Mr. Howe reviews and corrects only the "format (not the content or results of the inspections) of [the] written reports." (Bd. Decision, Pet.'s Ex. B at 6.) Mr. Howe testified that he evaluates the finished product "in terms of reviewing them to determine if they're correct." (Bd. Hr'g at 44.) When questioned by counsel for the Board as to what his review would entail, Mr. Howe said:
 "The review would entail a review of the report itself. That is the work product that we're talking about. If the work product were inadequate, then the inspector would be called in and told where I thought it was inadequate and then we can discuss the issue to find out what exactly his thoughts were.
 Generally it's a matter of law, it's either right or it's wrong or there is a better way to do it. So the inspector would be told to modify the report, usually in terms of format, not an actual citation."
(Bd. Hr'g at 52.) Once his subordinate corrected the document, Mr. Howe would review the document again. (Bd. Hr'g at 52.) Even if the mistake was clerical, Mr. Howe holds the inspector responsible for reviewing the report before submitting it to him. (Bd. Hr'g at 53.) Mr. Howe clearly takes personal responsibility for ensuring the work product of his employees is correct. Although the Board attempts to classify Mr. Howe's review of his employee's work as clerical or ministerial in nature, Mr. Howe is ultimately responsible for the work product of his employee, and he ensures that the report meets the requirements of the Fire Marshal's Office.
Mr. Howe testified that his job description was accurate and never qualified that statement. (Bd. Hr'g at 43.) In the job description, the Chief of Fire Safety Inspections "works under the direction of a superiorwith wide latitude for the exercise of initiative and independentjudgment." (Pet.'s Ex. J.) The Board found that the Chief of Fire Safety Inspections gives his staff their assignments. (Bd. Decision, Pet.'s Ex. B at 6.) The Fire Marshal has been involved in assigning investigators on "occasions" (Bd. Decision, Pet.'s Ex. B at 6-7), and the Fire Marshal testified that he has infrequent involvement in assigning investigators (Bd. Hr'g at 62). The Board contends that work assignments made to equalize work "on a rotational basis" or assignment based on employee skills are routine, and that assigning tasks falling within an employee's job description does not require the use of independent judgment.
The Board's statements are not supported by the evidence in the record. Mr. Howe testified that he needs to clear "some things" with the Fire Marshal. (Bd. Hr'g at 48.) When asked what "things" had to be cleared with the Fire Marshal, Mr. Howe said:
 "Something that may affect the office. There is nothing really specific. It's more of a judgment call. If it's normal course of business, then I wouldn't necessarily clear it with [Fire] Marshal Owens. Something that might affect the office or something that he maybe questioned on a procedure or an action we have taken, that should be discussed with [Fire] Marshal Owens."
(Bd. Hr'g at 48-49 (emphasis added).) However, Mr. Howe said that it is the exception, not the rule, that he has to clear anything with the Fire Marshal. (Bd. Hr'g at 49.) From Mr. Howe's statements, it is clear that he has "independent discretion" in determining what technician will do what work. See Hosp. Gen. Menonita, 393 F.3d at 268. Mr. Howe's authority to assign employees goes beyond merely "filling openings on a shift from a pre-determined list," see Northeast Utils. Serv. Corp. v. NLRB,35 F.3d 621, 625 (1st Cir. 1994), and there is no "direct oversight by management without the participation or knowledge" of Mr. Howe, EdwardStreet Daycare Ctr., Inc., 189 F.3d at 49.
In view of all of the duties of the Chief of Fire Safety Inspections, it is clear that the position is a supervisor within the Fire Marshal's Office as defined by the Act because he is responsible for the performance and work product of his employees and has discretion to assign and direct his employees' work. Thus, this Court finds that the Board's determination that William Howe was not a supervisor was clearly erroneous.
 Chief of Fire Investigations
The Fire Marshal's Office also seeks to exclude the position of Chief of Fire Investigations from the collective bargaining unit because it is supervisory. The Board contends that the Chief of Fire Investigations is not a supervisory employee because he does not have the authority "to hire, fire, transfer, suspend, lay-off, recall, promote, discharge, reward, or discipline employees, or to effectively recommend such action, or to adjust grievances." Furthermore, the Board argues that the Chief of Fire Investigations does not exercise independent judgment in his direction of employees.
The Board found that the Chief of Fire Investigations, Henry Serbst,[1]
never had occasion to discipline, suspend, or terminate any employees (Bd. Decision, Pet.'s Ex. B at 8), but it also found that a disciplinary action against an employee who mistakenly discharged his weapon came from Mr. Serbst (Bd. Decision, Pet.'s Ex. B at 4, 8). The Board found that the Chief of Fire Investigations received grievances and provided written responses to the Fire Marshal, who made the final decision on how the grievance would be decided. (Bd. Decision, Pet.'s Ex. B at 8.) Furthermore, the Board found that Mr. Serbst approves requests from his employees for vacation time or a personal day, and then sends the approval to the Fire Marshal or Chief Deputy Fire Marshal to sign the request, as required by the state personnel department. (Bd. Decision, Pet.'s Ex. B at 8; Bd. Hr'g at 67.)
Mr. Serbst gives staff assignments, reviews assignments, corrects assignments "for form," evaluates assignments, and notifies the author of errors or inaccuracies. (Bd. Decision, Pet.'s Ex. B at 8.) The Board found that the Fire Marshal would occasionally become involved in making assignments (Bd. Decision, Pet.'s Ex. B at 8.), but Mr. Serbst testified that this involvement was infrequent (Serbst Dep. at 29). The Fire Marshal testified that he would assign Fire Safety Inspectors for "critical" matters that needed immediate attention, and only after he attempted to contact the Chief of Fire Safety Investigations first. (Bd. Hr'g at 61.) Additionally, the Fire Marshal testified that after assigning an investigator, he would "always" inform Mr. Serbst of the assignment." (Bd. Hr'g at 61.) Mr. Serbst testified that he assigns the investigative work to the senior investigator and investigators that report to him. (Serbst Dep. at 6.) He stated that he works with the staff, organizing and coordinating their work, then reviewing their work. (Serbst Dep. at 16-17.) The involvement of the Fire Marshal in occasionally assigning investigators, especially in critical situations as when "a large number of fires" in one town had been set (Bd. Decision, Pet.'s Ex. B at 8), is not inconsistent with Mr. Serbst's authority to "responsibly direct subordinate [employees]." Edward StreetDaycare Ctr., Inc., 189 F.3d at 49.
The record and the Board's findings clearly reflect that Mr. Serbst had the authority, and used that authority, to discipline his employee. Decisions to discipline other employees "must often depend upon [the supervisor's independent] judgment, which enables assessment of the employee's proficiency in performing his job." Ky. River Cmty. Care,Inc., 532 U.S. at 716 (citing NLRB v. Yeshiva Univ., 444 U.S. 672, 686
(1980)). The Board found that disciplinary action against an employee for accidentally discharging his weapon at ACI "came from the Chief of Investigations." Mr. Serbst testified that he was informed of the incident by the chief of internal security at the prison, and he then ordered his employee to come back to the office. (Serbst Dep. at 22.) Mr. Serbst spoke to his employee upon returning to the office, and told the employee to fill out a report for the fire marshal. (Serbst Dep. at 22.) Mr. Serbst testified that he did not believe that the Fire Marshal disciplined the employee. (Serbst Dep. at 23.) Mr. Serbst made the independent decision to prohibit his employee to carry a weapon, and he required his employee to meet with him several times about proper gun handling and procedures for unloading the weapon. (Serbst Dep. at 23-24, 26-27.) The Fire Marshal testified that the decision to remove the employee's weapon was Mr. Serbst's. (Bd. Hr'g at 66.) Once Mr. Serbst was satisfied that his employee knew how to operate the gun, the employee was permitted to carry his weapon again. (Serbst Dep. at 24.)
Despite the Board's findings that Mr. Serbst never had the opportunity or authority to discipline his employees, the findings of the Board and the full, complete record clearly indicate that Mr. Serbst did take it upon himself to discipline his employee, without direction from the Fire Marshal. Furthermore, the Fire Marshal's involvement in occasionally handing out investigator assignments does not render Mr. Serbst's supervisory status invalid. Therefore, this Court finds that the Board's determination that Mr. Serbst was not a supervisor was clearly erroneous in view of the reliable, probative, and substantial evidence in the record.
 CONCLUSION
After review of the entire record, this Court finds the decision of the Board is clearly erroneous in view of the reliable, probative, and substantial evidence of the record. The Chief Deputy Fire Marshal, the Chief of Fire Safety Inspections, and the Chief of Fire Investigations are all supervisory positions within the Fire Marshal's Office, which cannot be included in the proposed bargaining unit. Accordingly, this Court reverses the decision of the Board. Counsel shall submit the appropriate judgment for entry.
[1] After the Fire Marshal's Office filed this petition, but before the commencement of the hearing before the Board, Mr. Serbst retired from state service.