**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 15-2143**

───────────────

PALMETTO PRINCE GEORGE OPERATING, LLC, d/b/a Prince George
Healthcare Center,

        Petitioner,

     v.

NATIONAL LABOR RELATIONS BOARD,

        Respondent.

───────────────

**No. 15-2221**

───────────────

NATIONAL LABOR RELATIONS BOARD,

        Petitioner,

     v.

PALMETTO PRINCE GEORGE OPERATING, LLC, d/b/a Prince George
Healthcare Center,

        Respondent.

───────────────

On Petition for Review and Cross-application for Enforcement of
an Order of the National Labor Relations Board.  (10-CA-154373)

───────────────

Argued:  September 21, 2016        Decided:  November 1, 2016

───────────────

Before MOTZ, TRAXLER, and AGEE, Circuit Judges.

───────────────

Petition for review denied; cross-petition for enforcement granted by published opinion. Judge Motz wrote the opinion, in which Judge Traxler and Judge Agee joined.

---

**ARGUED:** Jennifer Marie Fowler-Hermes, WILLIAMS, PARKER, HARRISON, DIETZ & GETZEN, Sarasota, Florida, for Petitioner/Cross-Respondent. Meghan Brooke Phillips, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent/Cross-Petitioner. **ON BRIEF:** John M. Hament, KUNKEL MILLER & HAMENT, Sarasota, Florida, for Petitioner/Cross-Respondent. Richard Griffin, Jr., General Counsel, Jennifer Abruzzo, Deputy General Counsel, John H. Ferguson, Associate General Counsel, Linda Dreeben, Deputy Associate General Counsel, Robert J. Englehart, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent/Cross-Petitioner.

---

DIANA GRIBBON MOTZ, Circuit Judge:

In this case, nurses sought to join a union and engage in collective bargaining with their employer. The National Labor Relations Board found that the nurses could unionize, rejecting the employer's contention that they were ineligible supervisors within the meaning of the National Labor Relations Act, 29 U.S.C. § 152(11). When the employer refused to bargain with the nurses' union, the Board ordered the employer to do so. The employer then filed this petition for review, and the Board cross-petitioned to enforce its order. Substantial evidence supports the Board's finding that the nurses are not supervisors because their duties do not require the exercise of independent judgment. Therefore, we deny the employer's petition and grant the Board's cross-petition.

I.

A.

Palmetto Prince George Operating, LLC, operates a nursing home in Georgetown, South Carolina. The nursing home provides care twenty-four hours a day, seven days a week.

Palmetto's management team consists of a Director of Nursing, an Assistant Director of Nursing, and three Unit Managers (collectively the "Managers"). The Managers monitor and evaluate the quality of nursing care, supervise and

3

discipline nursing staff, and arrange the schedules and assignments of the nursing staff.

The Center employs twenty-three nurses to staff its units: six registered nurses (RNs) and seventeen licensed practical nurses (LPNs) (collectively, the "Nurses"). All assess patients, answer call lights, administer medications, and perform general patient care duties.[1] In addition to the Nurses, the Center employs forty certified nursing assistants (CNAs). The CNAs assist residents with daily tasks, such as helping them bathe, repositioning them in bed, and aiding them in using the restroom. Palmetto's handbook describes the Nurses as the CNAs' "first line of authority," and it places the Nurses above the CNAs on its organizational chart.

B.

In 2015, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Union sought to represent the Nurses as their exclusive bargaining representative. On January 12, 2015, the Union filed an election petition with the Board. At the pre-election hearing before the Regional Director, Palmetto argued that the Nurses are supervisors and therefore have no collective

---

[1] RNs and LPNs share the same duties, with the exception that LPNs cannot sign assessments or administer small doses of intravenous medications. These differences do not bear on the question of whether they are supervisors.

4

bargaining rights under the National Labor Relations Act. See 29 U.S.C. § 152(3) (2012).

Section 152(11) of the Act defines "supervisor" as:

[A]ny individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

Palmetto contends that the Nurses are supervisors because they have the authority to discipline and responsibly direct the CNAs and must use independent judgment in exercising those two authorities. The parties have stipulated that the Nurses lack authority to perform any of the other ten functions listed in § 152(11).

The Regional Director concluded that Palmetto failed to prove the Nurses are supervisors. Accordingly, the Regional Director ordered an election, and the Nurses voted in favor of having the Union represent them. After the election, the Union requested that Palmetto recognize it as the Nurses' representative and begin bargaining with it. Palmetto refused, and the Union filed a refusal-to-bargain charge with the Board.

The Board's General Counsel then filed a complaint against Palmetto alleging that it had committed unfair labor practices in violation of §§ 158(a)(1) and (5) of the National Labor

5

Relations Act. The Board granted the General Counsel summary judgment, adopting the Regional Director's findings and concluding that Palmetto had indeed violated §§ 158(a)(1) and (5) of the Act. Palmetto filed a petition for review with us, and the Board filed a cross-petition to enforce its order.

## II.

### A.

We review the Board's factual findings regarding supervisory status for substantial evidence. Glenmark Assoc., Inc. v. NLRB, 147 F.3d 333, 338 (4th Cir. 1998). We affirm if the record contains enough evidence that "a reasonable mind might accept [it] as adequate to support a conclusion." Gestamp South Carolina, LLC v. NLRB, 769 F.3d 254, 263 (4th Cir. 2014) (internal quotation marks omitted). We defer to the Board's factual findings even if we might have resolved factual disputes differently. Id.

The Supreme Court has held that § 152(11) establishes a three-prong test for supervisory status. See, e.g., NLRB v. Kentucky River Cmty. Care, Inc., 532 U.S. 706, 712–13 (2001). Employees are supervisors if they (1) have the authority to perform any one of the twelve functions listed in § 152(11) or effectively recommend such action, (2) exercise that authority in a manner that is not merely clerical or routine but requires

6

the use of independent judgment, and (3) hold that authority in the interest of the employer.  Id.  The employer bears the burden of proving all three prongs.  Id. at 711–12.  And it must do so by a preponderance of the evidence.  Pac Tell Group, Inc. v. NLRB, 817 F.3d 86, 91 (4th Cir. 2016).

In this case, the parties dispute only the first and second prongs of this test.  We need only address the second -- whether the Nurses exercise authority requiring independent judgment.

The Act leaves the term "independent judgment" undefined. Moreover, the Supreme Court has recognized that the term "is ambiguous with respect to the degree of discretion required for supervisory status."  Kentucky River, 532 U.S. at 713 (emphasis in original).  The Court explained that it is "undoubtedly true that the degree of judgment that might ordinarily be required to conduct a particular task may be reduced below the statutory threshold by detailed orders and regulations issued by the employer."  Id. at 713-14.  The Supreme Court concluded that "[i]t falls clearly within the Board's discretion to determine, within reason, what scope of discretion qualifies."  Id. Accordingly, a court defers to the Board's interpretation of "independent judgment" so long as it is "reasonable and consistent with the Act."  Id. at 711–12.

After the Supreme Court decided Kentucky River, the Board explained that to exercise independent judgment, "an individual

must at a minimum act, or effectively recommend action, free of the control of others and form an opinion or evaluation by discerning and comparing data." In re Oakwood Healthcare, Inc., 348 NLRB 686, 693 (2006). Crucially, the Board concluded in Oakwood that "a judgment is not independent if it is dictated or controlled by detailed instructions, whether set forth in company policies or rules, the verbal instructions of a higher authority, or in the provisions of a collective bargaining agreement." Id.

B.

Palmetto does not challenge the reasonableness of the Board's current, post-Kentucky River interpretation of "independent judgment." Nor does Palmetto contend that this interpretation is inconsistent with the Act. Indeed, Palmetto conceded at oral argument that the Board's interpretation of "independent judgment" in Oakwood controls. Palmetto maintains, however, that our analysis of "independent judgment" in cases involving nurses issued prior to Kentucky River and Oakwood is in all respects "consistent" with those cases, and so governs the case at hand. Reply Br. 2.

Our pre-Oakwood cases responded to the Board's perplexing application of § 152(11) to nurses. Before Kentucky River, the Board took the position that nurses do not exercise "independent judgment" any time they exercise "ordinary professional or

8

technical judgment in directing less-skilled employees to deliver services." Kentucky River, 532 U.S. at 713 (quoting the Board's brief).

In a series of cases, we rejected that interpretation of "independent judgment" as unreasonable and held that the nurses at issue in those cases were supervisors. See, e.g., Beverly Enterprises, Virginia, Inc. v. NLRB, 165 F.3d 290, 298 (4th Cir. 1999) (en banc) (holding that nurses were supervisors because they exercised § 152(11) authorities "by and large without any guidelines or established criteria"); Glenmark, 147 F.3d at 341-45 (holding that nurses were supervisors given their authority to schedule and discipline nursing assistants without management approval).

After we decided these nurse/supervisor cases, the Supreme Court in Kentucky River similarly rejected the Board's sharp distinction between professional and independent judgment, holding that it was unreasonable to conclude that professional judgment can never be "independent" for the purposes of the Act. 532 U.S. at 714, 721 (citation omitted). In Oakwood, the Board adopted its current interpretation of "independent judgment" to comport with Kentucky River.

This is the first case requiring us to address the precedential value of our pre-Oakwood nurse/supervisor cases. It is settled law that an agency construction entitled to

9

deference supersedes a prior judicial construction of an ambiguous statute. Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982 (2005). The phrase "independent judgment" is ambiguous, and we have always understood that the Board's reasonable and consistent interpretations of it are entitled to deference. See, e.g., Beverly, 165 F.3d at 296; Glenmark, 147 F.3d at 338.

In Oakwood, the Board adopted a reasonable interpretation of "independent judgment." As we recently noted, there is no conflict between the Board's interpretation and the text of § 152(11) or Congress's intent to distinguish "true supervisors" from employees whom the Act protects "even though they perform 'minor supervisory duties.'" Pac Tell, 817 F.3d at 91 (quoting Oakwood, 348 NLRB at 686); see also NLRB v. Health Care & Retirement Corp. of America, 511 U.S. 571, 586–88 (1994) (recounting the legislative history of § 152(11)). Indeed, in Oakwood the Board did nothing more than implement guidance offered directly by the Supreme Court. See Kentucky River, 532 U.S. at 713–14 (noting the significance when determining "independent judgment" of an employer's "detailed orders and regulations").

We therefore defer to the Board's interpretation of "independent judgment" and apply its standards here. To the extent our pre-Oakwood cases accord with those standards, they

10

remain instructive.[2]  However, the Board's current standards supersede our prior cases to the extent the two conflict.  Thus, for example, before Oakwood, we considered it highly probative of independent judgment if nurses served as the most senior staff on site for significant portions of the work week.  See Beverly, 165 F.3d at 297–98; Glenmark, 147 F.3d at 341–42; NLRB v. St. Mary's Home, Inc., 690 F.2d 1062, 1066 (4th Cir. 1982). In accordance with Kentucky River, when detailed employer rules severely constrain the nurses' discretion, Oakwood indicates that this fact is not as probative as we had held.  Moreover, in Golden Crest Healthcare Center, a case decided the same day as Oakwood, the Board expressly applied Oakwood to hold that the nurses at issue there, although serving for significant periods of time as the most senior staff on site, were not supervisors, particularly given that managers remained on-call after hours. 348 NLRB 727, 727, 730 n.10 (2006).

    With these legal principles in mind, we turn to the case at hand.

---

[2] In Oakwood, the Board also adopted a new interpretation of the term "responsibly to direct."  Oakwood, 348 NLRB at 690–92. Here, we need not address the extent to which this new interpretation displaces our prior cases.

III.

Palmetto argues that the Nurses here are supervisors because they have the authority to discipline and responsibly direct the work of CNAs in a manner requiring the use of independent judgment. Both arguments fail for the same reason: Palmetto simply has not shown that the Nurses must use any independent judgment when performing these functions.

A.

We first consider the evidence Palmetto offered in support of its contention that the Nurses must exercise independent judgment when disciplining CNAs.

Palmetto uses a progressive discipline policy that classifies violations into three categories. Category I includes minor infractions, such as failing to comply with the dress code or departmental procedures. Category II includes violations such as threatening other employees and ignoring protocols for lifting and moving residents. Category III includes the most serious violations, such as sleeping on the job, insubordination, and neglecting or abusing residents. Palmetto's current handbook lists the following disciplinary steps: documented oral counseling, reprimands, written warnings, suspension, and discharge.

Any employee can report a disciplinary violation, and in some cases, employees must report them. In particular, failure

12

to report a Category II or Category III violation is itself a Category II violation. The Managers conduct separate investigations of misconduct and make all final disciplinary decisions.

Nevertheless, Palmetto insists that the Nurses must use independent judgment in disciplining CNAs. The record before us contains very scant evidence of oral counseling and only three instances in more than three years -- 2011 through 2014 -- of Nurses filing written reports of CNA misconduct. In one, it is unclear under which category the violation fell. The other two involved Category II and Category III violations, which the Nurses had no choice but to report. In the Category III case, a Nurse sent a CNA home for sleeping on the job. Palmetto relies heavily on this incident. However, one instance of a Nurse reacting to such an egregious violation, by itself, does not demonstrate independent judgment. See Phelps Cmty. Med. Ctr., 295 NLRB 486, 492 (1989). Moreover, Palmetto's argument ignores its written rule that sleeping on the job is punishable only by discharge. The Nurse involved in this incident did not discharge or even suspend the CNA. She made no final disciplinary decision. Rather, she called Director of Nursing Jennifer Lambert to report the incident, who then investigated the matter and ultimately fired the CNA. The record before us indicates that Palmetto has given its Nurses only the

13

disciplinary power provided to every other employee (including CNAs themselves): the power to report rule violations to the Managers.

On this record, a reasonable mind could certainly conclude that Palmetto did not offer evidence sufficient to establish that the Nurses use independent judgment when disciplining CNAs.

B.

We next consider the evidence Palmetto offered in support of its contention that the Nurses must use independent judgment when they responsibly direct the work of CNAs.

Palmetto argues that Director Lambert's testimony establishes as much. But at most, that testimony establishes that the Nurses exercise not independent, but heavily constrained, judgment. Director Lambert testified that the Nurses are responsible for making sure CNAs:

> (1) follow various laws, rules, and regulations, including the OSH [sic], (2) comply with infection control procedures, (3) stay within the scope of their certification, (4) adhere to proper protocols for resident hygiene, (5) treat residents in a non-abusive or neglectful [sic] manner, (6) follow the proper feeding and hydration rules and regulations, (7) document treatment, and (8) comply with fire alarm, disaster evacuation, and resident elopement procedures.

Pet. Br. 31.

Palmetto has extensive policies on all these matters and on virtually all CNA duties. It has training, instructions, and

14

policies on everything from handwashing and bathing residents to dealing with patient abuse. During mandatory in-service meetings, the Managers regularly give specific instructions to Nurses and CNAs on such topics as repositioning residents, properly clothing residents, taking breaks, clocking in and out, attending to residents' hygiene, and providing meal service. Palmetto also conducts fire, evacuation, and resident elopement drills. State law and OSHA regulations provide additional protocols for infection control, patient hygiene, and emergency preparedness. In every case, the Nurses' responsibility seems to amount to the same thing: making sure the CNAs follow the written instructions. This suggests that the Nurses serve merely as conduits for these instructions.

It is true, of course, that "the mere existence of company policies does not eliminate independent judgment from decision-making if the policies allow for discretionary choices." Oakwood, 348 NLRB at 693 (citing Glenmark, 147 F.3d at 341). However, Palmetto has not offered even one instance in which the Nurses could (let alone did) direct CNAs largely without guidance from Palmetto's instructions.

Palmetto leans heavily on the Managers' absence at night and on weekends, leaving the Nurses as the most senior staff on site during those times. But, under the Oakwood standard, which Palmetto agrees controls, these facts do not themselves

15

establish independent judgment.  See Golden Crest, 348 NLRB at 730 n.10 (applying Oakwood and holding that charge nurses were not statutory supervisors despite this arrangement).  Here, substantial record evidence establishes that Palmetto's instructions continue to control nurses' discretion even after hours and on weekends.  When the Managers go home at night or for the weekend, they do not take their instructions with them.

Moreover, the record evidence establishes that both the Director and Assistant Director of Nursing rotate "on-call" duties on nights and weekends, and the three Unit Managers have other limited on-call duties.  The Unit Managers have instructed the Nurses to call them after hours for assistance, and Director Lambert testified that the Nurses may call her for assistance as well.  As the Board explained in Golden Crest, the fact that nurses are the most senior staff on site after hours "is even less probative where management is available after hours."  Id.[3]

Given these facts, the Board reasonably concluded that the Nurses do not exercise independent judgment when directing CNAs.

---

[3] Palmetto's reliance on our decision in Beverly is misplaced.  In addition to predating Kentucky River and Oakwood, in Beverly the Board conceded that the employer "provides no list of criteria by which assignments, direction of nursing assistants, or emergency dismissals are to be made."  165 F.3d at 298.  Here, Palmetto has utterly failed to rebut evidence that its instructions provided detailed "criteria" on these issues.

16

IV.

The record offers abundant evidence supporting the Board's finding that Palmetto failed to establish that the Nurses use independent judgment in disciplining and directing the work of CNAs. Accordingly, we must deny Palmetto's petition for review and grant the Board's cross-petition for enforcement of its order.

PETITION FOR REVIEW DENIED;
CROSS-PETITION FOR ENFORCEMENT GRANTED
