GREENAWÁY, JR.,
concurring in part and dissenting in part.
This case turns on the National Labor Relations Act’s (“NLRA”) definition of a “supervisor.” To qualify as a supervisor, an employee must have the authority to exercise independent judgment in the performance of a supervisory function in the interest of the employer. NLRB v. Health Care & Ret. Corp. of Am., 611 U.S. 571, 573-74, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994). This case concerns our interpretation of independent judgment generally and specifically in the context of recommending discipline.
In Mars Home for Youth v. NLRB, 666 F.3d 850 (3d Cir. 2011), we approved of the general and specific interpretations of independent judgment at issue here; With only passing reference to Mars Home, the Majority rejects the general and specific interpretations of independent judgment before us. Instead of relying on Mars Home, the Majority rests its decision on NLRB v. Attleboro Associates, Ltd., 176 F.3d 154 (3d Cir. 1999), and concludes, in a final footnote, that Attleboro prevents us from coming to the very .conclusion that our brothers subsequently came to in Mars Home.
This argument lacks merit for two reasons. First, it misreads Attleboro by erroneously concluding that it rejected the general and context specific interpretations of independent judgment at issue here. Second, it applies the incorrect standard of deferential review to the administrative decision. Because the Majority’s opinion misconstrues Mars Home, misreads Attleboro, and applies the wrong standard of review, I respectfully dissent.[1]
I.
In addressing New Vista’s challenge to' this NLRB, decision, we must apply the familiar two-step analysis of Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). See, e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council, 485 U.S. 568, 574, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) (“[Statutory interpretation by the [National Labor Relations] Board would normally be entitled to deference unless that construction were clearly contrary to the intent of Congress,” (citing Chevron, 467 U.S. 837 at 842-43, and n. 9, 104 S.Ct. 2778)). “If Congress has directly and clearly spoken to the precise question at issue, our Chevron analysis is complete at Step One, and Congress’s unambiguously expressed intent controls.” Helen Mining Co. v. Elliott, 859 F.3d 226, 234 (3d Cir. 2017).
“[I]f the statute is silent or ambiguous with respect to the specific issue,” we move to the second .step of the inquiry and determine whether Congress expressly or implicitly delegated authority. Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778. “If Congress has explicitly left a gap for the *137 agency to fill,” “[s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.” Id. at 843-44, 104 S.Ct. 2778. If “the legislative delegation to an agency on a particular question is implicit rather than explicit,” “a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.” Id. at 844, 104 S.Ct. 2778.
We follow these steps even if we have already interpreted the statute unless our earlier decision decided the case on the first step. Indeed, in National Cable & Telecommunications Association v. Brand X Internet Services, the Supreme Court held that “[a] court’s prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.” 545 U.S. 967, 982, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005.[2]
II.
We must decide this case under Chevron's, most deferential standard of review. This case hinges on the NLRA’s definition of a supervisor. That statutory text provides as follows:
The term “supervisor” means any individual having authority, in the interest of the employer, to ... discipline other employees .,, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.
29 U.S.C. § 152(11). To determine whether an employee qualifies as a supervisor, we must answer three questions: “First, does the employee have authority to engage in 1 of the 12 listed activities? Second, does the exercise of that authority require the use of independent judgment? Third, does the employee hold the authority in the interest of the employer?” Health Care & Ret. Corp. of Am., 511 U.S. at 573-74, 114 S.Ct. 1778 (internal quotation marks omitted). Answering affirmatively to each and every question makes an employee a supervisor. This case relates to the independent judgment prong of the inquiry.
Following the steps established by the Supreme Court in Chevron, we must first ask, has Congress “directly and clearly spoken to the precise question at issue[?]” Helen Mining Co., 859 F.3d at 234. The Supreme Court has held that Congress has not spoken clearly on the definition of independent judgment. In NLRB v. Kentucky River Community Care, Inc., the Supreme Court found that “it is certainly true that the statutory term ‘independent judgment’ is ambiguous with respect to the degree of discretion required for supervisory status” and that “[i]t falls clearly within the Board’s discretion to determine, within reason, what scope of discretion qualifies.” 532 U.S. 706, 713, 121 S.Ct. 1861, 149 L.Ed.2d 939 (2001) (emphasis in original).
Because “the statute is silent or ambiguous with respect to the specific issue,” we move to the second step of the inquiry and determine whether Congress expressly or implicitly delegated authority. Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778. The *138 Supreme Court has held that Congress expressly delegated the NLRA’s interpretation to the NLRB. In ABF Freight System, Inc. v. NLRB, the Supreme Court noted that because the NLRB’s interpretation of the NLRA “involves that kind of express delegation, the Board’s views merit the greatest deference.” 510 U.S. 317, 324, 114 S.Ct. 835, 127 L.Ed.2d 152 (1994) (emphasis added). As a result, “[Statutory interpretation by the Board would normally be entitled to deference unless that construction were clearly contrary to the intent of Congress.” Edward J. DeBartolo Corp., 485 U.S. at 574, 108 S.Ct. 1392 (citing Chevron, 467 U.S. 837 at 842-43, and n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694). Cf. Kentucky River Cmty. Care, Inc., 532 U.S. at 715, 121 S.Ct. 1861 (refusing to defer to an NLRB interpretation that was “directly contrary to the text of the statute” (emphasis added)).
A.
In light of this framework, we must defer to the NLRB’s interpretation of independent judgment because it is not “arbitrary, capricious, or manifestly contrary to the statute.” Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778.
In this case, the Regional Director followed a four step process. First, the Regional Director provided the following definition of a statutory supervisor:
Individuals are “statutory supervisors if: (1) they hold the authority to engage in any one of the 12 listed supervisory functions, (2) their exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment, and (3) their authority is held in the interest of the employer.”
App. 863 (Kentucky River Cmty. Care, Inc., 532 U.S. at 713, 121 S.Ct. 1861).
Second, the Regional Director determined whether the individuals had the authority to engage in supervisory functions, such as assigning work, responsibly directing, disciplining, effectively recommending discipline, and removing other employees from the floor.
Third, the Regional Director, relying on Oakwood Healthcare, Inc., 348 N.L.R.B. 686 (2006), defined independent judgment: “The Board found that the relevant test for supervisory status utilizing independent judgment is that ‘an individual must at minimum act, or effectively recommend action, free of the control of others and form an opinion or evaluation by discerning and comparing data.’ ” App. 866 (quoting Oakwood Healthcare, 348 N.L.R.B at 693).
Fourth, the Regional Director found, in light of Oakwood Healthcare, that the LPNs did not exercise independent judgment in performing supervisory functions. With regard to effectively recommending discipline, the Regional Director provided the following test: “To prevail, the Employer must prove that: (a) LPNs submit actual recommendations, and not merely anecdotal reports, (b) their recommendations are followed on a regular basis, (c) the triggering disciplinary incidents are not independently investigated by superiors, and (d) the recommendations result from the LPNs’ own independent judgment.” App. 873.
The Régional Director denied the employer’s claims on the third prong of this test. Specifically, he concluded that the employer had not shown that LPNs used independent judgment in performing this supervisory function because the employer did not prove that the purported supervisors’ managers followed their discipline recommendations without independently investigating them. App. 874 (“[T]he record is silent as to whether Roldan’s superi *139 ors conducted an independent investigation other claims...id. at 874 (“No,written documentary evidence regarding this [termination recommendation] is part of the record.”). He further noted that some of the employer’s own witnesses undermined the employer’s claims and one of the LPNs’ managers “testified that when she receives a discipline form from an LPN, she will ask for statements from the reporting nurse, the offending aide and any eyewitnesses.” Id. at 878. See also id. (explaining that another LPN manager independently investigated a discipline recommendation made by an LPN).
B.
In Mars Home, we approved of the three contested elements of the decision at bar.[3] First, we observed that “[t]here is a three-part test for determining supervisory status” and quoted the same test as the Regional Director did in the decision under review. Id. at 858-54, 104 S.Ct. 2778 (quoting Kentucky River Cmty. Care, Inc., 532 U.S. at 713, 121 S.Ct. 1861).
Second, we, like the Regional Director in the case before us, adopted Oakivood Healthcare’s general interpretation of independent judgment and held, “A supervisor exercises independent judgment when he acts or recommends action ‘free of the control of others and form[s] an opinion or evaluation by discerning and comparing data.’ ” Id. at 853-54, 104 S.Ct. 2778 (quoting Oakwood Healthcare, 348 N.L.R.B. at 692-93).
Third, we “considered Mars Home’s remaining” challenges to the Regional Director’s decision and “f[ou]nd them without merit.” Id. at 855, 104 S.Ct. 2778. This final determination matters because the employer specifically objected to the Regional Director’s conclusions about the employees’ authority to use their independent judgment in effectively recommending discipline, Petitioner’s Br. at 51-60, Mars Home for Youth v. NLRB, 666 F.3d 850 (3d Cir. 2011), and because the Regional Director’s decision on recommending discipline closely paralleled the decision at bar.[4]
Indeed, the Regional Director in Mars Home provided the following test for deciding whether an employee exercised independent judgment in effectively recommending discipline:
In summary, a putative supervisor’s preparation of written counseling forms, write-ups or reports does not establish Section 2(11) authority, even if such documentation is part of a progressive disciplinary process, in the absence of evidence that 1) the putative supervisor has the discretion to decide whether to document the infractions (independent judgement [sic]); 2) the document is an “integral part of the [e]mployer’s progressive system in that they are used to document each phase of the disciplinary process and routinely result in actual discipline” (imposition of discipline); and 3) *140 the documentation is accepted by higher management without independent investigation.
Regional Director’s Decision and Direction of Election at 29-30, Mars Home for Youth v. NLRB, 666 F.3d 860 (3d Cir. 2011) (“Mars Home Regional Director Decision”).
This test mirrors the test used by the Regional Director in the decision under review. Compare Mars Home Regional Director Decision at 29 (“1) the putative supervisor has' the discretion to decide whether to document the infractions (independent judgement [sic])”) with App. 837 (“(d) the recommendations result from the LPNs’ own independent judgment.”); compare Mars Home Regional Director Decision at 29-30 (2) the disciplinary reports “routinely result in actual discipline”) with App. 837 (“(b) their recommendations are followed on a regular basis”);' compare Mars Home Regional Director Decision at 30 (“3) the documentation is accepted by higher management without independent investigation”) with App. 837 (“(c) the triggering disciplinary incidents are not independently investigated by superiors”).
Like the Regional Director in the case at bar, the Regional Director in Mars Home applied this test by finding that two employees did not qualify as supervisors because their supervisors independently investigated their recommendations for discipline. For one, the Regional Director concluded that “Employer has failed to sustain its burden of proof by a preponderance of the evidence that [alleged supervisor] effectively recommended the termination of [an employee] within the meaning .of Section 2(11) of the Act” because “[a]fter [the alleged supervisor’s] report was received by [the alleged supervisor’s manager], both [the alleged supervisor’s manager] -and [another manager] set up a time to talk by telephone with [the employee] about the matter in order to investigate the matter further.” Mars Home Regional Director Decision at 34. For the other alleged supervisor, the Regional Director came to the same conclusion because “the record is clear that the Employer has failed to sustain its burden of proof that, the sexual.-harassment incident evinces Section 2(11) authority by the [alleged supervisor] to effectively recommend discipline and/or discharge” because “management officials made an independent investigation before reaching its termination decision.” Id. at 35.
Thus, we have approved of the NLRB’s current interpretation of independent judgment both in general and in the context of recommending discipline. As a result, these interpretations are not “arbitrary, capricious, or manifestly contrary to the statute.” Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778. The law requires me to defer to these NLRB interpretations and dismiss New Vista’s challenge.[5]
III.
The Majority takes a different approach. It does not rely upon Mars Home. Instead, the Majority holds that the Regional Director’s decision is “squarely at odds with our controlling precedent—specifically NLRB v. Attleboro Associates, Ltd., 176 F.3d 154 (3d Cir. 1999),” and “remand[s] this case to the Board to allow it to determine whether the LPNs have the authority to- effectively recommend discipline un *141 der Attleboro.” Maj. Op. at 116. See also Id. at 47-48, 112 S.Ct. 466 (explaining At-tleboro ’s interpretation of supervisor in the context of recommending discipline).
In its ultimate footnote, the Majority cites Chevron and attempts to shoehorn its decision into this framewori by writing that “the Board relies on ah 'interpretation that we already held was an unreasonable interpretation of the statute in ''Attleboro” and that “Chevron or Brand X deference would not allow us to adopt an unreasonable interpretation.” Maj. Op. at 136 n. 14.[6] This attempt fails.
A.
The Majority misreads Attleboro. The Majority .holds that “the Board relies on an interpretation that we already held was an unreasonable interpretation of .the statute in Attleboro.” Maj.- Op. at 135 n. 14. The Majority does not distinguish between the general and context specific interpretations of independent judgment or explain which interpretation Attleboro held was unreasonable. To prove that Attleboro did not regard any of these interpretations as unreasonable, I analyze, each of them in turn.
Attleboro did not reject the Regional Director’s general interpretation of independent judgment. It refused to defer to the NLRB’s “conclusion] that. the ‘discharge of duties involving professional judgment and discretion may nonetheless be “routine” within the meaning of. Section 2(11)’ and not the exercise of ‘independent judgment.’” Attleboro, 176 F.3d at 170. Here, the Regional Director “found that the relevant test for supervisory status utilizing independent judgment is that ‘an individual must at minimum act, or effectively recommend action, free of the control of others and form -an opinion or evaluation by discerning and comparing data.’ ” App. 866 (citing Oakwood Healthcare, 348 N.L.R.B at 693). This interpretation springs from Oakwood Healthcare, 348 N.L.R.B. at 692-93, a decision issued seven years after Attleboro. As a result, Attleboro did not find that the NLRB’s general interpretation of independent judgment was unreasonable.
Furthermore, Attleboro did not hold that the particular context specific interpretation of independent judgment at issue here was -unreasonable. Attleboro’s decision on effectively recommending discipline consists of three parts. None of these parts support the Majority’s position.
First, we noted that the Regional Director found that ’an LPN could not exercise independent judgment “because the Director of Nurses reviewed the recommendations and sometimes would investigate an incident before acting upon a recommendation. ...” Attleboro, 176 F.3d at 164 (emphasis added). Then, “We h[e]ld this .application of .the term ‘independent judgment’ to the facts of this case erroneous as a matter of,law.” Id. (emphasis added).
*142 This holding does not substantiate the Majority’s position. Unlike in Attleboro, we now review a Regional Director decision that omitted “sometimes” and stated the rule in more absolute terms: “To prevail, the Employer must prove that ... the triggering disciplinary incidents are not independently investigated by superiors” App. 873. In applying this rule, the Regional Director could not find a single example of when the employer accepted a discipline recommendation without investigating it. Id. at 873-74. As a result, the Regional Director found that the LPNs could not have exercised independent judgment because the employer always—not sometimes—investigated the recommendation before accepting it. Because the context specific interpretation of independent judgment here differs from the one rejected by Attleboro, Attleboro could not have dismissed—let alone considered—the context specific interpretation of independent judgment at issue here.
Second, Attleboro “h[e]ld that because Attleboro’s LPN charge nurses ... initiate a progressive disciplinary process that becomes part of a CNA’s permanent personnel file and could lead to her termination, the charge nurses effectively recommend discipline using independent judgment within the meaning of section 2(11).” Attleboro, 176 F.3d at 165.
This interpretation does not foreclose all other interpretations. “[T]he statutory term ‘independent judgment’ is ambiguous with respect to the degree of discretion required for supervisory status” and “[i]t falls clearly within the Board’s discretion to determine, within reason, what scope of discretion qualifies.” Kentucky River Cmty. Care, Inc., 532 U.S. at 713, 121 S.Ct. 1861 (emphasis in original). We have previously held that “Congress has not spoken on the ‘precise question’ before us” when a statutory term “is susceptible to multiple interpretations, and the statutory language does not directly address” the issue presented. Egan v. Del. River Port Auth., 851 F.3d 263, 270 (3d Cir. 2017).[7] Because independent judgment is an ambiguous term and because ambiguous terms are susceptible to multiple meanings, independent judgment is susceptible to multiple meanings. As a result, our previous interpretation of “independent judgment” does not prohibit all other interpretations.
Third, in Attleboro we provided a detailed synopsis of Glenmark Associates, Inc. v. NLRB, 147 F.3d 333, 342 (4th Cir. 1998), noted that “[t]he situation at Attle-boro is a hybrid of those of the nursing homes in Glenmark,” Attleboro, 176 F.3d at 165, and observed that “the court recognized that the NLRA does not preclude a charge nurse from having supervisory status merely because her recommendation is subject to a superior’s investigation.” Id. at 164.
This summary of Glenmark does not make the interpretation at issue here unreasonable. Importantly, Attleboro’s summary of Glenmark is dicta. If language “was not necessary to our holding,” it “was therefore dicta.” IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 261 n. 4 (3d Cir. 1998). This language was not necessary to our holding in Attleboro. In Attleboro, we rejected a decision that found that an LPN did not qualify as a supervisor because her recommendation was sometimes subject to the employer’s investigation. 176 F.3d at 164. Glenmark, according to our summary, rejected a decision that found that an LPN *143 did not qualify as a supervisor because her recommendation was always subject to the employer’s investigation. Id. Holding that one investigation of a recommendation may not prevent someone from qualifying as a supervisor would not stop a future court from holding that two instances of investigating recommendations prohibited someone from being a supervisor. As a result, the Glenmark observation was not necessary to our holding in Attleboro.
Even if it were not dicta, I would be reluctant to follow it. Indeed, the Fourth Circuit has regarded Glenmark as no longer binding. Palmetto Prince George Operating, LLC v. NLRB, 841 F.3d 211 (4th Cir. 2016). In that case, an employer refused to bargain collectively with LPNs on the theory that the LPNs qualified as supervisors. Id. at 214. In front of the NLRB’s Regional Director and then before the Fourth Circuit, the employer “maintain[ed], however, that our analysis of ‘independent judgment’ in cases involving nurses issued prior to Kentucky River and Oakwood is in all respects ‘consistent’ with those cases, and so governs the case at hand.” Id. at 216. ■
The Fourth Circuit acknowledged that before Oakioood Healthcare, the NLRB had interpreted independent judgment to exclude “ordinary professional or technical judgment in directing less-skilled employees to deliver services,” and that the Fourth Circuit had rejected that interpretation as unreasonable. Id. The Fourth Circuit cited Glenmark, the inspiration for Attleboro, as an example of a case that rejected the NLRB’s pr e-Oakwood Healthcare interpretation and summarized it as “holding that nurses were supervisors given their authority to schedule and discipline nursing assistants without management approval.... ” Id. It rejected this argument, the very argument that the Majority makes here, in three steps.
First, it observed that “[i]t is settled law that an agency construction entitled to deference supersedes a prior judicial construction of an ambiguous statute.” Id. (citing Brand X Internet Servs., 545 U.S. at 982, 125 S.Ct. 2688). Second, it noted that Oakwood Healthcare’s interpretation of the statute deserved deference because the statute was ambiguous and the interpretation was reasonable. Id. Third, it concluded, based on Kentucky River and Oakwood Healthcare—not Glenmark—that the employer “simply has not shown that the Nurses must use any independent judgment when performing these functions.” Id. at 217. Specifically, it held that “[t]he record before us indicates that [the employer] has given its Nurses only the disciplinary power provided to every other employee (including CNAs themselves): the power to report rule violations to the Managers.” Id. at 218. As a result, Palmetto eviscerated Glenmark ’s power in this context.
B.
Even if the Majority’s reading of Attle-boro were correct, I could not join the Majority because it misapplies Chevron here. At its second step, Chevron asks us to determine whether “Congress has explicitly left a gap for the agency to fill” or if “the legislative delegation to an agency on a particular question is implicit....” Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778. If Congress explicitly left a gap to fill, “[s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.” Id. at 843-44, 104 S.Ct. 2778. On the other hand, if Congress implicitly left a gap to fill, “a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.” Id. at 844, 104 S.Ct. 2778.
*144 Here, the Majority focuses on the interpretation’s reasonableness—not its arbitrariness, capriciousness, or manifestly contrariness—when it writes that “Chevron or Brand X deference would not dllow us to 'adopt an - unreasonable interpretation.” Maj. Op. at 135 n. 14. Thus, it assumes that the less deferential implicit delegation standard applies. It makes this assumption without addressing the Supreme Court’s conclusions that the NLRB’s interprétations of the NLRA “involves that kind of express delegation,” ABF Freight System, Inc., 510 U.S. at 324, 114 S.Ct. 835 (emphasis added), and that “statutory interpretation' by the Board would normally be entitled to deference unless that construction were clearly contrary to the intent of Congress.” Edward J. DeBartolo Corp., 485 U.S. at 574, 108 S.Ct. 1392 (1988) (emphasis added).
IV.
A majority of New Vista’s LPNs voted to avail themselves of protections created by Congress. The agency responsible for providing those rights found that the LPNs deserved them. In coming to this conclusion, the agency took an approach that we had previously sanctioned in Mars Home. However, the Majority casts away this agency’s decision with passing reference to our previous precedential approval. Instead of following this precedent, the Majority harkens back to Attleboro and incorrectly claims that Attleboro rejected the agency’s approach before us—an approach we are duty bound to approve. Because Attleboro did not regard the decision at bar as “manifestly contrary to the statute,” Chevron, 467 U.S. at 844, 104 S.Ct. 2778, I cannot join the Majority’s opinion. I respectfully dissent.

. I concur with Sections I, II, and III.

. See also Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 502 (3d Cir. 2008) (”[T]he Supreme Court left no doubt that if a court of appeals interprets an ambiguous statute one way, and the agency charged with administering that statute subsequently interprets it another way, even that same court of appeals may not then ignore the agency’s more-recent interpretation.”).

. The Majority observes that the Petitioner in "Mars Home for Youth did not cite Attleboro. ...” Maj. Op. at 135 n. 14. This comes as little surprise. As explained in this and the following sections, the NLRB decision reviewed by Attleboro lies in stark contrast to the one before us in Mars Home and the analogue we judge today.

. The Majority claims that "Mars Home for Youth did not analyze the definition of ‘effectively to recommend’ 'discipline,' 29 U.S.C. § 152(3)....” Maj. Op. at 135 n. 14. Perplex-ingly, it does not explain how we could "consider ] Mars Home’s remaining claims,” including its challenge to the Board's decision about effectively recommending discipline, and "find [those claims] without merit,” Mars Home, 666 F.3d at 855, without analyzing them.

. Reilly v. City of Harrisburg, 858 F.3d 173, 177 (3d Cir. 2017) ("In our Court ‘the holding of a panel in a precedential opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel, Court en banc consideration is required to do so.’ ” (quoting Policy of Avoiding Intra-circuit Conflict of Precedent, Internal Operating Procedures of the Third Circuit Court of Appeals § 9.1)).

. In this footnote, the majority implies, in dicta, that the Board waived a deference based argument. The briefing does not support this assertion, New Vista conceded that "[t]he NLRB's legal determinations are subject to plenary review, but with due deference to the NLRB’s expertise in labor matters [and] [t]he Court upholds the NLRB’s interpretations of the NLRA if they are reasonable and consistent with the NLRA,” Petitioner's Br. at 53-54. The NLRB agreed with New Vista’s concession, noting, "Whether an individual is a statutory supervisor is a question of fact particularly suited to the Board’s expertise and therefore subject to limited judicial review.” Respondent’s Br. at 18. Even if the parties did not raise it, this question constitutes an antecedent legal question that we must decide, See Haybarger v. Lawrence Cty. Adult Probation & Parole, 667 F.3d 408, 412-13 (3d Cir. 2012).

. See also Chevron, 467 U.S. at 865 n. 11, 104 S.Ct. 2778 ("The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.”).